## PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. COZATT.

[No. 5,658.   Filed December 18, 1906.   Rehearing denied February 27, 1907.   Transfer denied April 2, 1907.]

1. TRIAL.—*Directing Verdict.*—It is error to direct a verdict for defendant, where there is any evidence, or legitimate inferences therefrom, to support a verdict for plaintiff.   p. 690.

2. MASTER AND SERVANT.—*Place of Work.*—*Trespass.*—*Railroads.*—A servant engaged in repairing the end wall of a railroad freight-station is not a trespasser in going on and across the ends of the tracks adjacent to such wall in the necessary discharge of his duties.   p. 691.

3. SAME.—*Negligence.*—*Proximate Cause.*—Where a servant put his knee against a bumping-post, in an effort to pitch a tool over the railroad track, and his knee slipped and was caught by a backing freight-car, the backing of such car was the proximate cause of his injury.   p. 691.

4. NEGLIGENCE.—*Proximate Cause.*—*What Is.*—The proximate cause of an injury is the responsible cause—the cause which is the active, operative, continuing and natural source of the injury.   p. 691.

5. MASTER AND SERVANT.—*Negligence.*—*Contributory.*—*Selecting Dangerous Way.*—*Question for Jury.*—The Appellate Court cannot hold as a matter of law that a servant was guilty of contributory negligence in attempting to carry a tool between freight-cars standing in the freight-station and the bumping-post, when that was the most direct and least obstructed way, such question being for the jury.   p. 692.

6. TRIAL. — *Instructions.* — *Master and Servant.*—*Negligence.*—*Contributory.*—In an action by a servant for damages caused by the backing of freight-cars against a bumping-post, between which plaintiff's knee was caught and crushed, an instruction that if his knee was caught because cinders gave way under his foot the verdict should be for defendant is properly refused, since how the knee bent down is immaterial, and since the instruction wholly omits any mention of defendant's negligence.   p. 692.

7. SAME.—*Instructions.*—*Non-Direction.*—*Evidence.*—An instruction on the subject of damages which fails to state that the jury must confine itself to the evidence is not misleading where in another instruction the jury was told that it should determine the facts from the evidence.   p. 693.

Pittsburgh, etc., R. Co. *v.* Cozatt—39 Ind. App. 682.

8.  **TRIAL.** — *Instructions.* — *Damages.—Crippled Condition.—Resulting Unpleasantness.*—In a personal injury case, where plaintiff's knee was crushed, resulting in the loss of his leg, an instruction that the jury may consider the fact, if it be one, that "plaintiff will be deprived of the pleasure and satisfaction in life that those only can enjoy who are possessed of a sound body and the free use of all of its members," is correct.   p. 694.

From Morgan Circuit Court; *Joseph W. Williams,* Judge.

Action by Charles E. Cozatt against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals. *Affirmed.*

*Samuel O. Pickens* and *Owen Pickens,* for appellant.
*John M. Bailey* and *George W. Grubbs,* for appellee.

WILEY, P. J.—Appellee recovered a judgment below against appellant for damages for personal injuries alleged to have been caused by its negligence. The complaint is in two paragraphs, to each of which a demurrer was overruled. Answer in denial. Trial by jury, and with their general verdict they found specially as to specific facts by their answers to interrogatories. Appellant's motions for a new trial and for judgment in its favor upon the interrogatories were overruled.

Overruling the demurrer to the complaint, the motion for a new trial, and the motion for judgment on the answers to the interrogatories are all assigned as errors, but they are all expressly waived in argument, excepting the overruling of the motion for a new trial.

That the nature of the action may clearly appear, it is important to state the material facts relied upon as disclosed by the complaint. The first paragraph avers that appellant owned and operated a steam railroad, and that it had tracks along and upon the public streets and alleys in the city of Indianapolis, and owned and operated a certain building for a freight-depot, the west end thereof fronting on South

Delaware street; that inside of said depot appellant had four or five tracks, over which it ran its cars for the purpose of loading and unloading freight; that the building extended east from Delaware street four or five hundred feet, and was open, so as to. allow ingress and egress of cars; that the west end of the depot was closed up with a brick wall, and at the end of each track appellant had erected and maintained large posts, for the purpose of preventing trains and cars from running off the tracks into the brick wall; that on the north side of said depot, extending the length thereof, was a platform, on a level with the lower part of the car doors, which was used in loading and unloading freight; that wagons and teams could be driven along the north side of said platform; that the distance from the north rail of the north track in said depot to the south side of said platform was about three feet three inches, and the distance between the platform from the north side of box-cars on the north track was about twelve inches; that the distance between the cars occupying various tracks in the depot was about twelve inches; that when said depot and tracks were full of box-cars, a person in the west end of the depot, at the west end of the cars thereof, could not see or know what was taking place at the east end; that on March 6, 1903, at the time appellee was injured, all said tracks were full of cars, leaving a space between the west end of said cars and said bumping-post, so that persons could pass; that in the northwest corner of said depot the space between the bumping-post of the north rail of the north track and the south side of the platform was filled up with cinders; that on the east side of the bumping-post was a large, square, steel plate, held in place by bolts and screws, which was placed there to allow the drawbars and bumpers to strike against; that at the west end of the platform, and flush with the west wall of the depot, was a large box, eight feet east and west, five feet seven inches north and south, and seven feet high, used by appellant for hold-

ing shavings; that in the space between the platform and the north bumping-post on the north track, and against the brick wall, was a brick pier, two feet east and west, seventeen inches north and south, and ten feet high; that a short time before March 6, 1903, one of appellant's cars on one of the tracks in the depot had been run over the bumping-post at the end of said track, and into said brick wall, thereby knocking the same down; that one Millikin had been employed by defendant to rebuild said wall; that appellee, on the day named, was working for Millikin in rebuilding the wall, and was foreman of the men working there, and he was overseeing the work; that appellant knew that plaintiff and the men working under him were working at that time in rebuilding the wall; that the brick, timbers and debris from the torn down wall were scattered along the west end of the depot, and west of said bumping-post, all of which appellant well knew on that day; that in working at that place and time it was necessary for appellee and his men to cross and recross the tracks in the depot, and east of said bumping-post and west of the west end of the cars on said tracks, all of which appellant then and there well knew; that appellee was working with the knowledge and consent of appellant in rebuilding the wall; that in the forenoon of that day he went to the northwest corner of the depot, to said platform, to get a lifting jack and lever, and started to take them to the south side of said depot to use while repairing the wall; that by reason of the debris, hereinbefore mentioned, and the wooden brace and props west of the north bumping-post, appellee could not pass west of said post with the jack and lever; that while he was in the act of pitching the same over the north track, and between the west end of the car standing on the north track and the north bumping-post, and while standing on said cinders with his knee close to the iron plate of said post, appellant carelessly and negligently ran against the car at the east end of the depot on the north track,

with such force and violence as, in a moment's time, to jam said car standing on the west end of said north track against the bumping-post; that no warning was given to the appellee, that said car would be pushed against said post at said time; that the appellant well knew, or could have known by the exercise of ordinary care, that appellee would be hurt at that time if said car was jammed against said post; that appellee was in the act of pitching said lever as said cars were struck, and before he could let loose of same and step back his knee was caught between the bumper and steel plate on the post, thereby crushing his leg and knee, and making necessary the amputation of the same, to his injury, etc.

The second paragraph of the complaint is substantially identical with the first, with the averment of the following additional facts: That on the morning of March 5, 1903, before he went to work, he explained to the men who had charge, direction and control of the switching of cars in said depot and yards adjoining the same, the situation of the west end of the depot where they had to work, and that they had to cross and recross said tracks, and that it was a dangerous place, and requested said men to be certain to give appellee and his men a signal of warning before they backed any cars into the depot from the tracks, so that they would not be injured thereby; that on the morning before appellee and his men began to work on the wall he fully explained to the conductor of the switching crew the situation at the west end of the depot; that he and his men would necessarily have to be on the tracks in performing the work, and that it was a dangerous and close place, and requested the conductor to give them a signal of warning before backing any cars or engines into the depot on said tracks, a sufficient length of time so that they could avoid the danger and protect themselves from being injured or hurt thereby; that said conductor and the men who had charge of said crew, after appellee's explana-

tion and request, promised him that they would give him and his men a signal of warning before backing and running any cars or engines into the depot, in ample time for them to protect themselves from injury; that while appellee was in the act of pitching the lifting-jack over the north track between the west end of the cars standing on the north track and the north bumping-post, and while standing with his knee close to the iron plate of said post, and relying upon the promise of the conductor and yard boss to give him a signal of warning as they had promised to do, appellant's employes carelessly and negligently, without giving any warning or signal, caused cars to be run into the east end of the depot on said track, and against the car on said track, with great force and violence, and in a moment's time jammed said car upon and against the bumping-post, and that before plaintiff could step either backward or forward his knee and leg were caught between the bumpers and the steel plate as aforesaid, by which his leg was injured to his damage, etc.

Before taking up for consideration the questions presented by the motion for a new trial, we will state generally what we gather from the evidence of important undisputed facts. Millikin had a contract with appellant by which he was to repair a brick wall at the west end of appellant's freight-depot in the city of Indianapolis, which had been broken down by a car which ran into it. He employed appellee to oversee the work. There were four railroad tracks inside the depot, extending from near the west end the full length thereof and out at the east end. At the west end of these tracks were bumping-posts to stop cars. Appellee had been at work for two days before he was injured, the accident occurring at 7:30 o'clock on the morning of the third day. The tracks were full of cars all the time appellee was engaged at the work. There was an opening twenty or twenty-five feet wide in the wall extending across the two tracks, which opening had been somewhat enlarged

by the breaking of the wall and by the removal of a part of it by appellee and the men under him. In order to do the work required of them appellee and his men erected a scaffold along the wall on the inside and outside thereof, extending on the outside about fifteen or eighteen inches north of the north edge of the opening in the wall. The bumping-post at the end of the north track was about three feet from the wall. The scaffolding occupied about all of the space between the wall and this bumping-post. There was a steel plate on the east side of this post for the drawbars of the car to strike when they were pushed back. Around the bumping-post was a pile of cinders which had been thrown there by appellant, extending about half way to the top of the post. Appellee and his men, in tearing down the wall, allowed the brick and other debris to drop down and remain upon the ground between the posts and the wall. The scaffold was so erected that in order to pass under it it was necessary for the men to stoop down and crawl over the braces of the scaffold, which they did in doing the work. The northwest corner of the wall began at the sidewalk of Delaware street, and the wall extended southeast about sixty feet, veering off over the edge of the sidewalk. There was a platform over which freight was loaded into the cars upon the tracks inside the depot, extending the full length thereof parallel with the north track. A flight of steps connected the west end of this platform with the sidewalk on Delaware street at the northwest corner of the depot. A lifting-jack belonging to appellant was lying upon the platform about eight or ten feet east of the steps at the west end. Appellee wanted to use this jack to raise the jamb at the south end of the opening in the wall. When he got the jamb ready for the use of the jack he went to get it, and in going he passed along the scaffolding and through the space between the drawbars of the last car on the north track and the bumping-post, that space being about six inches in width. He got the jack

from the platform, carried it back to the space between the drawbar and the bumping-post, placed his right knee against the plate on the post and his left knee against the drawbar, and attempted to pitch the jack across the track, and by the exertion in doing so his right knee gave way or bent down, and at that instant cars on the track were moved by appellant's employes, shoving the last car back against the plate on the post, catching appellee's knee, and causing the injury complained of. None of appellant's employes in charge of the work there had any knowledge of appellee's position at the post when he was injured.

Appellee could have gone from the place where he wanted to use the jack out on the west side of the wall, thence north a distance of about fifty feet to the steps, up the steps onto the platform, where the jack lay, being a total distance of sixty-five feet, and gotten the jack and carried it back the same way. There was no obstruction to his going to the jack by that way, and there was nothing to prevent him from doing so, and thus carrying it where he wanted to use it. He went after the jack and attempted to use it without the invitation, knowledge, or consent of appellant. There was no agreement between appellant or either Millikin or appellee as to who should furnish the tools and appliances for doing the work at which appellee was engaged. He could have gone across Delaware street and obtained a jack by the payment of fifty cents for the use of it, but he undertook to use appellant's jack because it was more convenient and was furnished gratuitously. The evidence further shows that appellee's injury resulted in the loss of his leg, as described in the complaint.

We will consider the questions presented by the motion for a new trial in the order of their presentation and discussion by appellant's counsel.

Upon these facts, which seem to be undisputed, it is insisted that it was error of the trial court to refuse to give an instruction tendered by appellant, directing a verdict in

its favor. This insistence is based upon three grounds: (1) Because in attempting to get the jack appellee was performing an act which was solely for his own convenience, and in doing so he passed beyond the place where he was invited to be in performing the work required of him under the contract between him and Millikin, and was, therefore, while attempting to move the jack, as indicated, a trespasser upon appellant's property, and appellant, having no knowledge that he was in a place of danger, owed him no duty, and was not guilty of negligence in moving the cars. (2) Because the pushing of the car against the bumping-post was not the proximate cause of appellee's injury, the giving way or bending of appellee's knee from his exertion in pitching the jack having intervened and brought about the injury. (3) Because appellee's negligence proximately contributed to his injury, in that he chose a plainly difficult and dangerous way to get the jack, when an absolutely safe way was open to him.

Before considering the action of the court in refusing to direct a verdict, it is important to keep in mind that there is evidence in the record from which the jury were authorized to reach the conclusion that the employes of appellant had assured appellee, upon being advised that he and his men were in a place of danger, that before pushing any cars against those standing on the tracks near where they were working, they would give them due warning, so they might protect themselves from injury.

It has long been settled in this State that it is error for a trial court to direct a verdict for defendant where there is any evidence that will support a verdict against it. *Weis* v. *City of Madison* (1881), 75 Ind. 241, 39 Am. Rep. 135. There is evidence here upon which the question of appellant's negligence and appellee's contributory negligence, under proper instructions, should have been submitted to the jury. It is only where the plaintiff's evidence, with all legitimate inferences which the jury

are authorized to draw from it, is insufficient to sustain a verdict, that the court can properly direct a verdict for defendant. *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385.

Upon the facts stated, we feel fully justified in holding that appellee was not a trespasser. While working for an independent contractor, he was doing work for the 2. benefit of appellant. He was on appellant's premises where he had a right to be, and where he had to be to do the work in which he was engaged. We cannot adopt so narrow a view as to say that he was a trespasser unless he was in the exact spot or location where the actual work was being done. His employment was not circumscribed within such narrow limits. In going to get the jack, to aid in the prosecution of his work, he was in a place where he had a right to be, under the invitation of appellant.

It is next insisted that pushing the car against the bumping-post was not the proximate cause of the injury, but that the giving way of appellee's knee intervened and 3. brought about the injury, and hence that became the proximate cause. The answer to this contention is, that if the cars had not been pushed against the bumping-post no injury would have resulted, for it was the impact of the car against the bumping-post that produced the injurious result. The proximate cause is the efficient cause, the one that necessarily sets the other in motion. *Pennsylvania Co.* v. *Congdon* (1893), 134 Ind. 226.

In determining the proximate cause the inquiry is directed to the responsible cause. That cause will be held proximate which is shown to be active, opera- 4. tive and continuing, and the probable and natural sources of the injury. *Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95.

The following authorities support the proposition that the proximate cause of the injury was the sudden backing

of the cars against the bumping-post, and that the giving way of appellee's knee was not such an intervening cause as to relieve appellant from liability. *Reid* v. *Evansville, etc., R. Co.* (1894), 10 Ind. App. 385-390; *Knouff* v. *City of Logansport* (1901), 26 Ind. App. 202; *Grimes* v. *Louisville, etc., R. Co.* (1892), 3 Ind. App. 573-576.

Neither can we say as a matter of law that appellee was negligent, and hence proximately contributed to his injury in selecting a plainly difficult and dangerous way to

5. get the jack, when a safe way was open to him. The jury found, in answers to interrogatories, that appellant could not have gone on the sidewalk at the west end of the depot, from the point where he was at work and needed the jack, for the reason that it was obstructed by the scaffolding and covered by brick, mortar and debris from the wall. As shown by such answers, he selected the most direct and least obstructed way. As to his contributory negligence, as a question of fact, the jury resolved it in his favor, and under their answers and the evidence we cannot disturb the judgment upon this ground. Appellant was not entitled to a peremptory instruction.

Appellant tendered, and the court refused to give, the following instruction: "If you find from the preponderance of the evidence that the plaintiff attempted to

6. pass around the bumping-post at the end of the north track, and in passing over the loose cinders which were piled up around the post the cinders gave away under him and caused him to get his knee between the drawbar and the bumping-post, and he thereby received the injury complained of, he cannot recover, and you should return a verdict for the defendant." Counsel for appellant urge that this instruction should have been given, upon the theory that there was evidence tending to show that the accident occurred in a manner substantially different from that alleged in the complaint, and hence there was a failure of proof to sustain the allegation. It is charged that, by his

exertion in attempting to throw the jack over the track, appellee's knee gave way or bent down, so that it was brought between the drawbar of the car and the plate upon the bumping-post, at the time the car was pushed back. There is some evidence to the effect that immediately after the accident, while appellee was lying upon the ground, or platform, he stated that the loose cinders that had been thrown about the post gave way under him as he attempted to pass around the post, causing him to get his knee in the place where it was crushed. Appellee denied that he made any such statements, and others present testified that they did not hear him make them. This conflicting evidence tendered an issue of fact as to the particular manner in which the accident occurred. If there was no other evidence as to how the accident happened, we can see no fatal variance between it and the averments of the complaint. It is averred that in throwing the jack over the track appellee's knee gave way or bent down, so that it brought his knee to the point of the impact between the drawbar and the bumping-post. It can make no material difference how his "knee gave way or bent down." If it was caused by the giving way of the cinders the result was the same. But aside from these considerations, the instruction is too narrow. It wholly omits any reference to the question of appellant's negligence, and restricts the rights of the parties to immaterial facts. There was no error in refusing it.

The tenth instruction related to the question of damages, and two objections are urged to it: (1) Because the jury were not advised that in assessing damages they should keep within the evidence; (2) because the jury were told that in assessing damages they might consider, if they found it to be a fact, "that the plaintiff will be deprived of the pleasure and satisfaction in life that those only can enjoy who are possessed of a sound body and the free use of all of its members." Aside from the objections urged to this instruction, it is important to note

that the jury were plainly and fairly told what facts they might properly consider in determining the amount of the recovery, if they should find for appellee. True, this instruction does not, in terms, tell the jury that they must determine such facts from the evidence, and in this regard, standing alone, is not beyond criticism. In another instruction, however, the court told the jury that "upon the facts as you find them to be from the evidence, and the law as given in these instructions, you must determine your verdict." These two instructions considered and construed together, plainly presented to the jury a correct guide by which they were to arrive at a conclusion upon every issue of fact. Upon this question it seems clear that the jury were not misled, and hence the failure of the tenth instruction to direct them to confine their deliberations upon the question of damages, within the evidence, was not reversible error.

As to the second objection urged to the instruction, it is a sufficient answer to say that this court has given its approval to an instruction in substantially the same language. *American Strawboard Co.* v. *Foust* (1895), 12 Ind. App. 421. Finally it is urged that the verdict is not sustained by sufficient evidence and is contrary to law. The argument in support of this contention is based upon three propositions: (1) That appellee was a trespasser; (2) that the injury did not result from the cause charged in the complaint, but that the bending down of the knee was the intervening cause; (3) that the evidence shows that appellee was guilty of contributory negligence, and hence could not recover. We have in a former part of this opinion disposed of these questions adversely to appellant's contention.

Judgment affirmed.