## COLUMBIA CREOSOTING COMPANY ET AL. *v.* BEARD ADMINISTRATOR.

[No. 7,748. Filed November 22, 1912. Rehearing denied January 24, 1913.]

1. APPEAL.—*Review.*—*Verdict.*—*Answers to Interrogatories.*—*Motion for Judgment on Answers.*—In determining whether the trial court in overruling a motion for judgment on the answers to interrogatories notwithstanding the general verdict, the investigation is confined to the complaint, the interrogatories and the answers thereto, and the general verdict. p. 262.

2. TRIAL.—*Verdict.—Answers to Interrogatories.—Presumptions.*—
To support a general verdict for plaintiff, as against the facts
found by the answers to interrogatories, every intendment and
presumption that plaintiff has proved the allegations of his com-
plaint constituting a cause of action will be indulged. p. 262.

3. TRIAL.—*Verdict.—Answers to Interrogatories.—Control of Gen-
eral Verdict.*—Where the jury's answers to interrogatories are in
irreconcilable conflict with any fact or facts of the complaint,
essential to recovery, the general verdict must yield to the facts
found by such answers. p. 263.

4. MASTER AND SERVANT.—*Injury to Servant.—Complaint.—Verdict.
—Answers to Interrogatories.*—In an action for the death of a
servant by being crushed by an electric motor, allegations of the
complaint to the effect that the device for controlling the motor
was defective and that defendant placed an incompetent person
in charge of the motor, cannot be reconciled with facts specially
found showing that the accident was not caused by defects in
the motor, that a competent motorman was employed by defend-
ant to operate such motor, but that defendant's switchman, with-
out the direction or knowledge of defendant, or of any person
representing it, undertook to and was operating such motor at
the time of the accident. p. 265.

5. MASTER AND SERVANT.—*Injury to Servant.—Work Outside Reg-
ular Employment.—Liability.*—Where a servant employed to do
certain work, was injured while performing work which he volun-
tarily undertook to perform without direction, request or ac-
quiescence of the employer, and which was not included in the
service which he was employed to perform, recovery for such
injury is precluded. p. 265.

6. MASTER AND SERVANT.—*Injury to Servant.—Incompetent Fellow
Servants.—Verdict.—Answers to Interrogatories.*—No recovery
can be had against the master for injury to a servant, on the
theory of the master's negligence in employing an incompetent
fellow servant, where the injury resulted from the act of an
intoxicated, inexperienced and incompetent servant in starting an
electric motor backward instead of forward, and the special find-
ings show that such incompetent servant was not employed to
operate the motor and was not placed in charge thereof by de-
fendant, or anyone representing defendant, but that he took
charge of same at the request of defendant's regular and com-
petent motorman, without the knowledge or consent of defendant
or any person representing it. p. 266.

7. MASTER AND SERVANT.—*Injury to Servant.—Proximate Cause.—
Furnishing Employes Beer.*—The act of defendant's superintend-
ent in furnishing beer on his own account to defendant's employes
as a reward for accomplishing an unusual amount of work, was

not the proximate cause of injury to an employe who was crushed by an electric motor operated by an incompetent and intoxicated person, who was not the regular motorman, but was in control thereof at the request of the regular motorman, without the knowledge or acquiescence of defendant, or of any of its officers or agents, and such regular motorman was not intoxicated and had not partaken of the beer.   p. 266.

8. NEGLIGENCE.—*Proximate Cause.—Efficient Cause.*—The proximate cause of an injury is not necessarily the immediate cause, but must be the efficient cause, which is the cause that sets in motion the chain of circumstances leading up to the injury. p. 267.

From Hancock Circuit Court; *Robert L. Mason,* Judge.

Action by Clarence M. Beard, administrator of the estate of John B. Gordon, deceased, against the Columbia Creosoting Company and another.   From a judgment for plaintiff, the defendants appeal.   *Reversed.*

*John B. Elam, James W. Fesler* and *Harvey J. Elam,* for appellants.

*Eli F. Ritter,* for appellee.

MYERS, J.—Appellee brought this action against appellants to recover damages for negligently causing the death of John B. Gordon.   The issues, joined by a general denial to the complaint, were submitted to a jury for trial, and a general verdict, with answers to 145 interrogatories, was returned in favor of appellee.   These answers formed the basis for a separate motion by each appellant for judgment notwithstanding the general verdict.   The overruling of each motion is separately assigned as error.

In the decision of the questions here presented our investigation is confined to the complaint, the interrogatories and the answers thereto, and the general verdict.   *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 53 N. E. 235; *Chicago, etc., R. Co.* v. *Fretz* (1910), 173 Ind. 519, 90 N. E. 76.   The burden was on appellee to prove allegations of his complaint constituting a cause of action, and in this respect he is entitled to every intendment and presumption as against

the facts found by the answers to interrogatories. But if from the answers of the jury facts are shown in irreconcilable conflict with any essential fact or facts of the complaint, and without which there could be no recovery, then the general verdict must yield to the facts found by such answers, for the general verdict amounts to no more than a finding that all the material allegations of the complaint are true.

Looking to the complaint, it appears, in substance, that on July 14, 1906, appellant company was operating a creosoting factory in the town of Shirley, Indiana, and appellant James Craven was its superintendent and manager, and in charge of the work and workmen, in number thirty-six, including decedent, John B. Gordon. The company's plant included a building in which were located two large retorts made of steel, through each of which was constructed a track for railroad cars. These retorts had a capacity of fifteen cars loaded with railroad ties, lumber or material to be creosoted. The retorts were provided with heavy iron doors, from which a movable track twelve feet long extended to other tracks leading in various directions into the yard, and over which materials to be creosoted were brought to the retorts by means of a motor-car, supplied with power by an underground cable. The movable track permitted said doors to be opened and closed. The motor was equipped with a device whereby the motorman in charge was enabled to turn on and off the power, and to regulate the speed and direction of its movements. On said day, and for two months prior thereto, said device was defective, making it difficult to stop and start the motor, of which defects appellants for all that time had knowledge, and decedent had no knowledge thereof. The work of decedent was to move the track, open and close the doors, and assist in moving the cars in and out of the retorts, and to hook and unhook the cable connecting the motor to the train of cars. On the day of the accident, as an inducement for the workmen there em-

ployed to do an unusual amount of work, appellant Craven brought to the factory a sixteen-gallon keg of beer, and invited and permitted said employes to drink said beer at their will; that immediately prior to the accident the employe regularly engaged in running said motor and moving the cars was replaced by another employe, who was without experience and incompetent for that work, and was highly intoxicated from the excessive use of said beer; that while said inexperienced, incompetent and intoxicated motorman was engaged in running the motor and moving the cars, Gordon, in the performance of his work, unhooked the cable connecting the motor with the cars, and signaled the motorman to move it away, so that the track could be removed and the doors to the retorts opened, but instead of moving it away from the doors of the retorts, by reason of his inexperience, incompetency and intoxicated condition, and without any warning whatever, he applied the power to the motor and started it with a jerk and great force toward and against decedent, crushing him between the motor and the door, thereby injuring him, and from which injuries he died within fifteen minutes; that at the time of the accident Gordon did not know the regular motorman was not in charge of the motor, nor that the man in charge was inexperienced, incompetent and in an intoxicated condition; that the sole cause of Gordon's death was the furnishing of intoxicating liquors to said employes while they were engaged in the dangerous business of handling the motor and cars; that appellants failed in the performance of a duty they owed to Gordon by permitting the defective motor to be used; by knowingly placing it in charge of an inexperienced, incompetent and drunken motorman, and by permitting the regular motorman to leave the motor in charge of said intoxicated person.

It will be noticed that the complaint does not characterize any of the acts of appellant as having been negligently done, or that any act was negligently omitted, but assuming that

the complaint states facts sufficient to constitute a cause of action, our attention will be directed to the findings of the jury in connection with the allegations of the complaint.

From a careful reading of the complaint it would seem that the pleader proceeded on the theory that the beer furnished by Craven to the employes in and about the plant was the proximate cause of Gordon's death. Other allegations, to the effect that the device for controlling the motor was defective, that the company placed an inexperienced, incompetent and intoxicated person in charge of the motor, that the regular and competent motorman was displaced by the company and an incompetent person given charge of it, cannot be reconciled with the facts specially found by the jury. By reference to the answers it will be seen that the accident was not caused by any defect in the motor, for it was expressly found that the motorman then in charge of it, by mistake in handling the device controlling its running direction, ran it backward instead of forward, thereby crushing decedent between the dummy-car and the ties on the truck next to it. As to the other allegations, the findings show that Ramer, a competent motorman, was employed by the company to operate the motor, and that the company had not, nor had its superintendent or other person representing it, displaced Ramer or put in charge of the motor any other person, nor was any change made at its direction or to its knowledge. Asbury was employed as switchman, and it was his duty to unhook the cable, but it appears that Ramer, a few minutes before the accident, without the knowledge or consent of any officer, agent or other person representing the company, turned the motor over to Asbury, who, without appellants' knowledge, was engaged in operating it at the time of the accident. Decedent was employed as a doorman, and had never been assigned the work of hooking or unhooking the cable connecting the trucks with the dummy-car. His employment did not include the service at which

he was engaged when injured, and which he voluntarily undertook to perform, without direction, request or acquiescense of the company. Under these circumstances a recovery is precluded. *Robertson* v. *Ford* (1905), 164 Ind. 538, 74 N. E. 1; *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151, 5 N. E. 187.

These answers also preclude any question relative to the master's employment or retention of incompetent fellow servants, or as to liability for the death of Gordon, on the theory of negligence in knowingly running the motor by the agency of a careless or incompetent person.

As to the beer, it is found that it was furnished at the suggestion of some of the employes in the yard engaged in loading ties, and on the afternoon of the day of the accident, which occurred about 6 o'clock, in consideration of their doing a certain amount of work on that day. The beer was not for the tie loaders alone, it was free for all. While it was bought to be drunk after the day's work was done, it was delivered before, was opened by said loaders and drunk before the day's work was completed. It was not the duty of Craven, nor did the company authorize him to buy beer for any one, and no officer of the company knew he had bought it for any of the employes, before Gordon was killed. The beer was furnished by Craven at his own expense, and as his own personal treat. While the beer was being drunk by the men about the plant, decedent was 100 feet or more away, and did not drink any of it himself, yet he knew that beer was being drunk by some of the men about the plant.

The general verdict finds that by reason of Asbury's inexperience, incompetency and intoxicated condition he applied the power to the motor, and started it backward instead of forward. But the findings show that he was not at that time acting in the line of his employment. He was the switchman, and the running of the motor was the work of

Ramer. No facts are stated in the complaint from which it can be said that Ramer drank any of the beer, nor does the complaint proceed on the theory that the furnishing of beer by Craven to the workmen, and the drinking thereof by Asbury, influenced Ramer to surrender the motor, or induced Asbury to abandon his employment, take charge of the motor and attempt to run it. The motorman, switchman and the decedent, at the time of the accident, were coemployes, and according to the findings they were not engaged in the work they were employed to do, but the furnishing of beer is not claimed to be the cause of the unauthorized engagements. Nor can it be said that the complaint proceeded on the theory that the accident happened because appellants negligently permitted conditions to exist or continue from which some injury to another might reasonably be anticipated to result, and the resulting injury was the natural and reasonable consequence of such negligence.

In actions of this character this court has held that "the proximate cause of an injury is not necessarily the immediate cause, but must be the efficient cause, and the efficient cause is that which sets in motion the chain of circumstances leading up to the injury." *Cleveland, etc., R. Co.* v. *Carey* (1904), 33 Ind. App. 275, 278, 71 N. E. 244. See, also, *Pittsburgh, etc., R. Co.* v. *Cozatt* (1907), 39 Ind. App. 682, 79 N. E. 534; *Chicago, etc., R. Co.* v. *Dinius* (1908), 170 Ind. 222, 84 N. E. 9; *Indianapolis St. R. Co.* v. *Schmidt* (1904), 163 Ind. 360, 71 N. E. 201.

From the record before us it must be said that the death for which damages in this case are claimed was caused by the negligence of coemployes, and not the furnishing of the beer.

The judgment is reversed. Believing that justice will best be subserved by a new trial, it is therefore ordered that a new trial be granted, with leave to amend the complaint,

if appellee so desires, and for such other proceedings not inconsistent with this opinion.

Note.—Reported in 99 N. E. 823. See, also, under (2, 3) 38 Cyc. 1927; (4, 6) 26 Cyc. 1513; (5) 26 Cyc. 1224; (7) 26 Cyc. 1092; (8) 29 Cyc. 488. As to the liability of an employer to an employe who volunteers upon a duty with which he is not charged, see 85 Am. St. 622. As to the doctrine of proximate and remote cause, see 36 Am. St. 807. Injury to servant in performance of duties outside scope of original employment, see 48 L. R. A. 796. Liability of master for injury to volunteer, see 13 L. R. A. (N. S.) 561; 16 L. R. A. (N. S.) 963.