110 F.3d 24
 WESTFIELD INSURANCE COMPANY, Plaintiff-Appellant,
v.
Candace HERBERT, Allen Herbert, Tammi Herbert, Lucy Brumley,
as Personal Representative for the Estate of
Jarvis Brumley, Lucy Brumley,
Individually, and Donald
Brumley, Defendants-Appellees.
 No. 96-3105.
 United States Court of Appeals,Seventh Circuit.
 Argued Feb. 24, 1997.
Decided March 28, 1997.
 
 Jeffrey J. Stafford, James W. Hehner (argued), Sipe, Pankow, Rumely & Hahner, Indianapolis, IN, for Westfield Ins. Co.
 Neil R. Comer (argued), Osgood, IN, for Candace Herbert, Allen Herbert, Tammi Herbert.
 Frank I. Hamilton, Jr., Greensburg, IN, for Donald Brumley, Lucy Brumley.
 Before POSNER, FLAUM, and EVANS, Circuit Judges.
 TERENCE T. EVANS, Circuit Judge.
 
 
 1
 On June 19, 1992, 9-year-old Candace Herbert was badly burned in a freak accident while playing in a neighbor's yard. She and her family sued the neighbors, the Brumleys. In turn, the Brumleys' insurer, the Westfield Insurance Company, brought this suit in federal court seeking declaratory judgments as to coverage under the Brumleys' homeowners policy and its duty to defend the Herberts' lawsuit, then pending in the circuit court for Decatur County, Indiana. Ours is a diversity suit, and Indiana law applies.
 
 
 2
 Both sides moved for summary judgment. The district court found for Westfield, holding that it had no obligation to defend the case nor to discharge any potential judgment. Upon reconsideration, however, the court did an about face. The second time around the court entered judgment ordering Westfield to continue the defense of the state case and finding that Westfield was obligated to pay any judgment which might be entered. Westfield appeals.
 
 
 3
 Donald Brumley is the son of the homeowner Lucy Brumley and her late husband. At the time of the accident Donald was 16 years old. He bought a 1985 Mercury Lynx, which sat in the family garage for about a month from the time he bought it until the day little Candace was injured. Because it was not being driven, Donald had not obtained license plates or automobile liability insurance coverage for the car.
 
 
 4
 Early in the morning of the fateful day, Donald was working on the Merc. Apparently oil was leaking through a valve cover, so Donald removed it in preparation for installing a new one he had purchased a day or two earlier. Later that evening, thinking he could sell the old valve cover, he decided to try to clean it up. To do that, he bought a half-gallon of gasoline. Working in the yard, he soaked the valve cover in gasoline in an attempt to loosen a gasket. He was not able to remove the gasket this way so he decided to burn it off the valve cover. Bad idea.
 
 
 5
 Predictably (to anyone perhaps but a 16-year-old), Donald's right hand caught on fire. As he tried to extinguish the fire, flames leaped to the open pan of gasoline, causing an explosion. Little Candace had the misfortune to be playing with other children in the Brumley backyard at the time. She was severely burned in the explosion.
 
 
 6
 The Brumleys were insured under a homeowners policy through Westfield, but as we mentioned, there was no automobile insurance on the Lynx. The homeowners policy contains a clause excluding insurance coverage for bodily injuries arising out of the maintenance of motor vehicles. Coverage is excluded for damage:
 
 Arising out of:
 
 7
 (1) The ownership, maintenance, use, loading or unloading of motor vehicles or other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured.
 
 
 8
 Westfield undertook the defense of the state court action but then filed this suit seeking a determination of coverage and its duty to defend Donald against the Herberts' claims.
 
 
 9
 The issue before us is whether maintenance of the Mercury was the "efficient and predominating" cause of the accident under Indiana law; i.e., that which sets in motion the chain of circumstances leading up to the injury. Columbia Creosoting Co. v. Beard, 52 Ind.App. 260, 99 N.E. 823 (1912). Both sides agree that in the morning, when he removed the valve cover, Donald was performing maintenance. Whether or not we agree on this point is not important for the critical question is whether, later in the day, when he was soaking the valve cover in gasoline in the yard and the car was behind closed doors in the garage, Donald was engaged in maintenance of a motor vehicle. A further question is, just what was the "efficient and predominating" cause of the accident?
 
 
 10
 We note that if language in an insurance contract is susceptible to more than one reasonable interpretation, it must be construed in favor of the insured. In order for an exclusion in a policy to be effective, it must clearly and unmistakably apply to the acts in question. In Huntington Mutual Insurance Co. v. Walker, 181 Ind.App. 618, 392 N.E.2d 1182, 1185 (1979), the court stated:
 
 
 11
 A condition or exclusion in an insurance contract, therefore, in order to be effective, must clearly and unmistakingly bring within its scope the particular act or omission that will bring the condition or exclusion into play.... Coverage will not be excluded or destroyed by an exclusionary condition unless such clarity exists.
 
 
 12
 See Standard Mut. Ins. Co. v. Bailey, 868 F.2d 893 (7th Cir.1989).
 
 
 13
 Cynics might suspect that were there an automobile liability insurance policy on the Lynx, each insurer in this case would be pointing a finger at the other. Such finger pointing is far from rare. For example, in Indiana Lumbermens Mutual Insurance Co. v. Statesman Insurance Co., 260 Ind. 32, 291 N.E.2d 897 (1973), a delivery man was carrying a water softener into the homeowner's basement and was injured when the stairs collapsed. The homeowners insurance company paid his claim but then sued his automobile insurer, contending that under the auto policy, "use" included the loading and unloading of the vehicle, and that by cooperating in the unloading the homeowners were insureds under the auto policy. The court rejected the claim and stated that unloading the truck was not the efficient and proximate cause of the accident. Or in Shelter Mutual Insurance Co. v. Barron, 615 N.E.2d 503 (Ind.App.1993), a friend of an insured was sitting on the hood of his truck. He grabbed her ankles and pulled her off the hood, injuring her. She sued and he notified his automobile insurer. The automobile insurer sought a declaratory judgment that it was not responsible and the trial court agreed based on a finding that the use of the truck was not the efficient and predominating cause of the accident. The insured then notified his homeowners insurance company and sought a declaratory judgment that the company owed him coverage. That company also disclaimed responsibility, pointed back at the auto insurer, and filed a motion for summary judgment, saying that the accident did, in fact, arise out of "ownership, maintenance or use of the ... truck." The motion was denied, but what seems clear is that in cases which fall in the margins, sometimes neither insurer wants to be responsible.
 
 
 14
 In the case before us, there is no finger pointing because there is only one finger. The finger here belongs to the homeowners' insurer who wants to disclaim responsibility, but we can't let the company escape. While Donald happened to hold in his hands a part to an automobile, he was not engaged in maintenance of his vehicle at the time the gasoline exploded. The maintenance of the vehicle had terminated once Donald removed the valve cover and set it aside. The situation is somewhat analogous to the unloading of the water softener. Once the softener was off the truck, unloading was completed. Lumbermens.
 
 
 15
 In Miller v. Loman, 518 N.E.2d 486, 492 (Ind.App.1987), the court stated that "in order to be involved in maintenance of a vehicle, one must be working on it in some manner." In that case, the muffler fell off a car on a four-lane street and the driver stopped the car, stating that he intended to kick the muffler out of traffic so that he could retrieve it later in order to reinstall it. A passenger volunteered to run back to the muffler, and as he was kicking it off the roadway he was hit by another car. Even though the car owner's plan was to reinstall the muffler, the court said that the situation did not involve maintenance. Our case is sufficiently different from Miller that if Donald had been cleaning the valve cover to reinstall it, we might determine that his actions involved maintenance. But he was not planning to reinstall it; he was not working on the car in any manner. He was cleaning the valve cover to sell it, so he was not involved in maintaining the car when the explosion occurred.
 
 
 16
 In addition to arguing that the cleaning of the valve cover was maintenance, Westfield also makes a "bigger picture" argument: if Donald had not removed the valve cover in the first place in order to fix the oil leak, the fire would not have happened; therefore, the action which clearly was maintenance--the removal of the valve cover--was the cause of the injury. Reduced to its simplest terms, the argument would be that if Donald had not decided to fix the leak, he would not have removed the valve cover. If he had not removed the valve cover, he would not have tried to clean it. If he had not decided to clean it, he would not have bought the gasoline. If he had not bought gasoline, there would have been no explosion.
 
 
 17
 We are convinced that Indiana courts would not trace the cause of this accident back this far. Indiana narrowly construes the exclusionary language "arising out of the ownership, maintenance or use" of a vehicle. In addition, the maintenance or use must be the "efficient and predominating cause" of the accident. Shelter Mutual. In fact, even Westfield concedes that there are limits to the length of the chain of events and that the chain would be broken if Donald had cleaned the valve cover months, rather than hours later. We do not find this to be a meaningful distinction. The chain was broken at least as soon as Donald removed the valve cover and set it aside with no plans to reinstall it.
 
 
 18
 The accident occurred not when Donald was working on his car, but when he was cleaning an object, which happened to be an automobile part, for resale. That caused the accident. Nothing in this record convinces us that the judgment (Judge Tinder's encore, of course) should be disturbed.
 
 
 19
 The judgment of the district court is AFFIRMED.