LYONS, ADMINISTRATRIX, *v.* CITY OF NEW ALBANY.

[No. 8,044.   Filed November 5, 1913.]

1. TRIAL.—*Directing Verdict.*—The trial court should give a peremptory instruction only when there is a total absence of evidence upon some essential issue, or where there is no conflict in the evidence and the only possible inference to be drawn therefrom is favorable to the party asking the instruction. p. 421.

2. TRIAL.—*Directing Verdict.*—*Duty of Court.*—The court, in passing on a motion for a peremptory instruction, must accept as true all facts which the evidence tends to prove, and draw, against the party requesting such instruction, all inferences which the jury might reasonably draw, and, in case of conflict in the evidence must consider only that favorable to the party against whom the instruction is asked. p. 421.

3. APPEAL.—*Review.*—*Reasons of Trial Court.*—The reasons given by the trial court for directing a verdict are unimportant in determining whether such action was erroneous, since it is not required to give any reason for so doing. p. 422.

4. NEGLIGENCE.—*Contributory Negligence.*—*Burden of Proof.*—In personal injury cases the defendant has the burden of proof on the issue of contributory negligence. p. 423.

5. NEGLIGENCE.—*Contributory Negligence.*—*Trial.*—*Directing Verdict.*—The question of contributory negligence is usually for the jury, and it is only in exceptional cases, when such issue is involved, that the court is warranted in directing a verdict, and then only when the facts are undisputed and susceptible of but one reasonable inference. p. 423.

6. MASTER AND SERVANT.—*Injury to Servant.*—*Contributory Negligence.*—*Jury Question.*—In an action for the wrongful death of an employe of a city fire department, who was killed while adjusting a fire alarm wire which was fastened to an electric light pole, where there was evidence that decedent, when near the top of the pole, said, "It was hot up here awhile ago", and that he was then directed by the fire chief to come down and wait until he would get the truck, that when the chief started after the truck decedent proceeded to the top of the pole and was electrocuted, and there was other evidence to the effect that the conversation between decedent and the fire chief consisted of instructions by the latter to decedent to take the wire to the top of the pole and adjust it there, and in a measure contradictory of the testimony of the fire chief, the question of contributory negligence was for the jury. p. 425.

7. MASTER AND SERVANT.—*Injury to Servant.*—*Assumption of Risk.*—*Knowledge of Servant.*—A servant engaged to act as a lineman without any knowledge or experience in the work required of him, and who knows nothing of its hazards and dangers, does not assume the risk, where the master knowing the nature of the work and its dangers, fails to warn or instruct him. p. 426.

8. MASTER AND SERVANT.—*Injury to Servant.*—*Assumption of Risk.*—*Directing Verdict.*—In an action for the death of a servant engaged in adjusting a fire alarm wire on an electric light pole, the fact that it was shown that decedent knew that there was some danger, without a further showing that he understood and appreciated its nature, will not warrant the court in directing a verdict for defendant on the ground that decedent had assumed the risk. p. 427.

9. MASTER AND SERVANT.—*Injury to Servant.*—*Assumption of Risk.*—*Jury Question.*—Where the evidence as to whether a servant appreciated the danger to which he was exposed is doubtful or admits of more than one inference, the question is for the jury. p. 428.

10. MASTER AND SERVANT.—*Inexperienced Servant.*—*Duty to Warn.*—It is the duty of a master not to expose an inexperienced servant, whom he requires to perform dangerous services, to such danger without giving him warning thereof. p. 428.

11. MASTER AND SERVANT.—*Inexperienced Servant.*—*Electricity.*—*Judicial Knowledge.*—The court recognizes the mysterious and subtle character and extreme dangers of electricity, and the importance and necessity of some knowledge of it on the part of those who are required to expose themselves to its dangers, and hence an inexperienced lineman, whose inexperience is known to the master, does not assume the risk of dangers with which he is unacquainted, and the master must warn him against the dangers incident to high current wires. p. 429.

12. MASTER AND SERVANT.—*Injury to Servant.*—*Assumption of Risk.*—*Directing Verdict.*—In an action for the wrongful death of a servant by coming in contact with an electric light wire while he was attempting to adjust a fire alarm wire, the court was not justified in directing a verdict for defendant on the ground that decedent had assumed the risk, where there was evidence as to decedent's inexperience and incompetency from which it may reasonably be inferred that he did not understand or appreciate the danger. p. 429.

13. MASTER AND SERVANT.—*Safety of Appliances and Places of Work.*—*Duty of Master.*—A master must use reasonable and ordinary care to provide and maintain for the servant safe appliances and a safe place in which to work. p. 432.

14. MASTER AND SERVANT.—*Injury to Servant.*—*Negligence of*

*Master.*—In an action for the death of a servant by electrocution while engaged in adjusting a wire on an electric light pole, where there was evidence showing that such servant was inexperienced, and also showing that there was a device nearby by which defendant could have cut off the electric current while decedent was on the pole, the question of whether defendant had exercised the degree of care and caution which it owed to decedent should have gone to the jury. p. 433.

From Scott Circuit Court; *William C. Utz,* Special Judge.

Action by Mollie Lyons, administratrix of the estate of Harry Lyons, deceased, against the city of New Albany. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*George H. Hester* and *Paris & Trusty,* for appellant.
*Charles W. Schindler* and *Korbly & New,* for appellee.

HOTTEL, P. J.—On November 7, 1906, Harry Lyons, while in the employ of appellee, lost his life by coming in contact with an electric light wire. Mollie Lyons, the widow of Harry, as administratrix of his estate, brought this action against appellee, and the "United Gas and Electric Company" for damages for said death, charging that it was caused by the carelessness and negligence of appellee and said United Gas and Electric Company. Before trial appellant dismissed her case as to said company.

The complaint was in two paragraphs, a demurrer to each of which was overruled. The averments common to both paragraphs are in substance as follows: Appellee, city of New Albany, has and maintains what is known as the "Gamewell" fire alarm system. From the central station of this system, wires are run to various parts of the city, connecting with numerous signal stations by means of which alarm signals are sent in from the various boxes to the fire department headquarters and to the several engine and reel houses maintained by such city. In installing this system the appellee, instead of using separate poles of its own upon which to place its wires, made an arrangement with the United Gas and Electric Company whereby it placed its wires on poles be-

longing to such electric light company. These alarm wires were generally located at or near the top of the poles and above the primary or high voltage wires of the light com-·pany, so that, in repairing or doing work of any kind in connection with the fire alarm wires, it becames necessary for appellee's employes who did such work, to climb the pole upon which said high voltage electric wires were located, and pass through or over them, and the cross arms to which they were attached. The fire alarm wires consisted of a single wire running from the central station along said poles to the signal station and thence to the ground, so that the earth formed the return circuit for such alarm system. The primary light wires were insulated, but they carried a voltage sufficient to produce an arc light of more than 2,000 candle power in each of the several hundred electric arc lamps then in use by said city, and this voltage was so high that its escape was not prevented by the insulation of such wires, and any contact with such primary wire by a person who at the time was also in contact with an alarm wire which passed to the earth would cause a deadly circuit of electricity to pass from such primary wire through the body of such person to the earth. For this reason work in connection with said fire alarm wires was extremely hazardous and dangerous.

The averments of negligence in the first paragraph omitting unnecessary detail, are in substance as follows: Appellee carelessly and negligently employed the decedent as its electrician when it knew him to be entirely without knowledge or experience in such work and wholly ignorant of the character and nature of its dangers, and then negligently ordered him to a place of work where he was required to come in contact with, or in close proximity to, said high voltage primary electric light wires, without giving him any notice or warning of the dangers connected with such work or any directions or instructions as to the manner of avoiding such dangers. The defendant United Gas and Electric Company,

at said times, had and maintained, on one of the streets of said city, an apparatus by means of which the current of electricity could be switched off of the wires attached to the poles on which said decedent was directed to work and they would thereby be rendered safe. Defendants each negligently and carelessly failed to make use of said apparatus or to turn off said current from said wires with which said decedent was required to work, but the same were then and there negligently and carelessly charged with said deadly current of electricity as aforesaid. In obedience to his said orders and direction, decedent climbed said pole and passed between the primary wires of said electric company which at the time carried said dangerous voltage of electricity, and without any knowledge of the dangers connected therewith, and while he was in contact with said primary wires, in the course of his said employment, he necessarily came in contact with the said fire alarm wire of said city, which he was then and there required to handle, and which was then and there grounded, and 2,280 volts of electricity were caused to and did pass through the decedent's body, by reason of which he was instantly killed.

The second paragraph of complaint differs from the first in that it contains additional averments to the effect that the insulation on the primary light wires had been carelessly and negligently allowed by the light company to become worn off or broken at a point near said pole and cross arm where the employes of the city had to work, which fact was well known to both defendants and the agents and servants of each, or might have been so known by the exercise of reasonable care, and was unknown to decedent.

The only answer to the complaint was a general denial. The case was submitted to a jury for trial, and at the close of appellant's evidence, a motion for a peremptory instruction in appellee's favor was sustained, and the jury instructed to return a verdict for appellee. A motion for new trial was overruled. Exceptions to said several rulings were properly

saved and the question of their correctness is presented in different form by the several errors assigned and relied on in this appeal. These rulings and the assigned errors predicated thereon in their last analysis present one and the same question, viz., under the issues and the evidence, Did the law authorize the trial court to withdraw the case from the jury by a peremptory instruction in appellee's favor? It is well settled by the decisions of both the Supreme Court

1. and this court that such an instruction should be given by the trial court only when there is a total absence of evidence given upon some essential issue, or where there is no conflict and the evidence is susceptible of but one inference, and that inference is favorable to the party asking the instruction. *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 537, 87 N. E. 723; *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290, 306, 76 N. E. 1060; *Annadall* v. *Union Cement, etc., Co.* (1905), 165 Ind. 110, 111, 112, 74 N. E. 893; *Cincinnati, etc., R. Co.* v. *Darling* (1891), 130 Ind. 376, 380, 30 N. E. 416; *Columbian Enameling Co.* v. *Burke* (1906), 37 Ind. App. 518, 525, 526, 77 N. E. 409, 117 Am. St. 337; *Hamilton* v. *Hanneman* (1898), 20 Ind. App. 16, 21, 50 N. E. 43. As further directions to

2. the trial court upon this subject the Supreme Court and this court have said: "Upon a motion for a peremptory instruction, the court is bound to accept as true all facts which the evidence tends to prove, and to draw, against the party requesting such instruction, all inferences which the jury might reasonably draw, and, in case of conflict in the evidence, to consider only that favorable to the party against whom the instruction is asked, that favorable to the other party being treated as withdrawn." *Roberts* v. *Terre Haute Electric Co.* (1905), 37 Ind. App. 664, 671, 76 N. E. 323, 76 N. E. 895. See, also, *Hall* v. *Terre Haute Electric Co.* (1906), 38 Ind. App. 43, 45, 76 N. E. 334; *Farmers Nat. Bank* v. *Coyner* (1909), 44 Ind. App. 335, 339, 88 N. E. 856; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 425, 73

N. E. 899; *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385, 388, 389, 14 N. E. 228; *Pittsburgh, etc., R. Co.* v. *Cozatt* (1907), 39 Ind. App. 682, 690, 79 N. E. 534. However, "If the established facts are such that no inference of liability can be drawn" therefrom, a peremptory instruction is proper. *Goode* v. *Elwood Lodge, etc.* (1903), 160 Ind. 251, 256, 66 N. E. 742; *Menaugh* v. *Bedford Belt R. Co.* (1901), 157 Ind. 20, 24, 60 N. E. 694; *Diezi* v. *G. H. Hammond Co.* (1901), 156 Ind. 583, 588, 60 N. E. 353; *Oleson* v. *Lake Shore, etc., R. Co.* (1895), 143 Ind. 405, 409, 42 N. E. 736, 32 L. R. A. 149; *Faris* v. *Hoberg* (1892), 134 Ind. 269, 273, 33 N. E. 1028, 39 Am. St. 261; *Williams* v. *Resener* (1900), 25 Ind. App. 132, 133, 56 N. E. 857. It follows from the authorities cited, and others that might be cited, that the trial court should not have sustained such motion if, after eliminating all evidence favorable to appellee, there was any evidence remaining which, with its legitimate inferences, would have been sufficient to support each of the facts essential to a verdict for appellant if one had been returned in her favor. The law as above announced is in effect conceded by appellee, but it insists that appellant has wholly failed to prove the cause of action alleged in her complaint.

It is suggested by appellant in her brief that the trial court gave as its reasons for sustaining said motion, that the evidence showed: (1) that the decedent met his death as a result of his own contributory negligence; (2) that decedent's death resulted from risks incident to his employment assumed by him; (3) that appellee was not shown to have been guilty of any negligence proximately causing decedent's death. The reasons given by the trial

3. court for sustaining said motion, whether sound or unsound, are not important. It was not necessary that the court should give any reason for its action and so far as the record discloses, none was given. It is proper to say, however, in this connection, that we have no doubt but that the reasons suggested by counsel, were given by the

trial court, and inasmuch as they furnish the only probable reasons for its action and present the essential issues in the case, we will address our inquiry to the question whether the evidence on these issues was such as to require the submission of the cause to the jury. It must be remembered that

4. on the issue of contributory negligence, the burden of proof was on appellee. §362 Burns 1908, Acts 1899 p. 58; *Cleveland, etc., R. Co.* v. *Lynn* (1908), 171 Ind. 589, 593, 85 N. E. 999, 86 N. E. 1017; *Indianapolis Traction, etc., Co.* v. *Miller* (1909), 43 Ind. App. 717, 720, 88 N. E. 526.

Both the Supreme Court and this court, in numerous

5. cases, have indicated to the trial courts the danger of giving a peremptory instruction based on the issue of contributory negligence. In the case of *Cleveland, etc., R. Co.* v. *Hadley* (1908), 170 Ind. 204, 207, 82 N. E. 1025, 84 N. E. 14, the court said: "The question of contributory negligence is usually to be determined by the jury, and it is only in a case where the facts are undisputed, and but one reasonable inference can be drawn therefrom, that the court may venture to direct a verdict." For other similar expressions see, *Indianapolis St. R. Co.* v. *O'Donnell* (1905), 35 Ind. App. 312, 316, 73 N. E. 163, 74 N. E. 253; *Nelson* v. *Chicago, etc., R. Co.* (1908), 41 Ind. App. 397, 399, 83 N. E. 1019; *New York, etc., R. Co.* v. *Callahan* (1907), 40 Ind. App. 223, 227, 81 N. E. 670; *Diamond Block Coal Co.* v. *Cuthbertson, supra*, 306. This court in the case of *Indianapolis St. R. Co.* v. *Coyner* (1908), 39 Ind. App. 510, 513, 80 N. E. 168, said: "Contributory negligence is, in such actions as the one now under consideration, an affirmative defense, the burden of establishing which is upon the defendant. * * * It necessarily follows that the peremptory instruction which under the rule requiring the plaintiff to establish his freedom from contributory negligence was permitted only in favor of the defendant, can now, the burden of proof having been changed, only be given in favor of the plaintiff." The Supreme Court, in the case of *Haughton* v.

*Aetna Life Ins. Co.* (1905), 165 Ind. 32, 39, 40, 73 N. E. 592, 74 N. E. 613, said: "The Constitution of this State (Art. 1, §20) provides: 'In all civil cases, the right of trial by jury shall remain inviolate.' Courts have guarded this right, with scrupulous care, against any encroachment. In all cases triable by jury the jurors are the sole and exclusive judges of the facts proved, and, of necessity, therefore, of the credibility of witnesses, and of the weight to be given to their testimony. Where upon a material point there is a failure of proof in the evidence of the party having the burden of an issue, the court may, as a matter of law, instruct the jury in favor of the other party to such issue. Where the facts are admitted by the pleadings or otherwise, or where the evidence upon the controlling question is documentary, and its interpretation and construction a matter for the court, and but one conclusion reasonably deducible therefrom, then in such cases the court may, as a matter of law, direct a verdict in accordance with the evident facts, and in favor of the party having the affirmative of the issue. But where a determination of the issue involves the credibility of witnesses, and rests upon inferences and deductions to be drawn from facts proved, it will be an invasion of the province of the jury for the court to direct a verdict. * * * When the judgment of the judge upon the sufficiency of the evidence to sustain the verdict is invoked by a motion for a new trial, then it becomes his duty, under the law, to weigh the evidence for himself, and either to confirm or overthrow the conclusion of the jury as in his opinion the preponderance of the evidence may require. But until such time as the matter may be thus brought before him, the duty of weighing the evidence must be left with the jury, where the law has placed it. The giving of the peremptory instruction in favor of the appellee, having the burden of the issue, was, upon the evidence in this case, an invasion of the province of the jury." To the same effect see, *Wagner* v. *Weyhe* (1905), 164 Ind. 177, 180, 73 N. E. 89; *Siebe* v. *Heilman*

*Mach. Works* (1906), 38 Ind. App. 37, 42, 77 N. E. 300; *Fowler Utilities Co.* v. *Chaffin Coal Co.* (1909), 43 Ind. App. 438, 440, 87 N. E. 689, and authorities there cited; *Stephens* v. *American Car, etc., Co.* (1906), 38 Ind. App. 414, 419, 78 N. E. 335, and authorities there cited; *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25, 36, 42, 62 N. E. 1028; *Hall* v. *Terre Haute Electric Co., supra; New York, etc., R. Co.* v. *Callahan* (1907), 40 Ind. App. 223, 226, 227, 81 N. E. 670; *Farmers Nat. Bank* v. *Coyner, supra,* 338, 339. There is some apparent conflict in the expressions used in the cases just cited and quoted from which indicate that a peremptory instruction is never warranted in favor of the party having the burden of proof where the evidence is oral, and the expressions in other cases above cited and quoted that indicate that such an instruction may be given when the evidence, though oral, is undisputed and admits of but one inference. However, all the authorities warrant the statement that it is an exceptional case that will justify the trial court in giving such instruction on oral evidence in favor of the party having the burden of proof. *Nelson* v. *Chicago, etc., R. Co., supra,* 399; *New York, etc., R. Co.* v. *Callahan, supra; Indianapolis St. R. Co.* v. *Coyner, supra,* 513.

The evidence tending most strongly to prove contributory negligence was that of the fire chief Featheringill who testified to being near the bottom of the pole on which 6. the decedent was killed and there having a conversation with him. According to this witnesses, the decedent was at that time on the pole with his head about even with the bottom cross arm, and looking toward the witness, said: "It was hot up here while ago." The chief told him to come down and wait and he would get the truck. He (the chief) started after the ladders and heard him decedent yell and turned and looked and he then had his left leg over the top of the cross arm between the main pole and the peg or glass arrangement that the wire was strung to. He was taken down dead. This evidence, standing alone, would

strongly tend to prove contributory negligence and assumption of risk, but Mr. Featheringill was contradicted by other witnesses in several of his statements, and upon this particular evidence he was contradicted by Mr. Milligan who testified that he was painting a house near the pole where decedent was killed and saw him on the pole and heard a part of his conversation with the fire chief. He says in substance that he heard the decedent say just before Featheringill came up that there was something hot in there. The chief then came up and was standing there giving the decedent "instructions what he wanted him to do with the wire, I suppose to haul it up there and put it on top of this peg. * * * I heard him (the chief) tell him (decedent) he wanted him to take it (a fire alarm wire) up and fasten it upon the top of this peg that was on top of the pole * * * I paid no more attention * * * until I heard a noise like a cry and I looked around and I seen he had hold of the wire up there * * * with both hands". He was at this time "laying on one of the other wires * * * attached to this pole, and was in agony * * * jerking and going through motions." Mr. Featheringill "hollowed for him to throw it down let go of it, and he was never able to let go of it. * * * He (decedent) was trying to pull it (the fire alarm wire) up over these wires here to fasten it on this peg (indicating)". When we ignore, as we must, under the authorities before indicated, all the evidence except that favorable to the appellant on this subject, it seems to us that there can be no doubt but that as affecting the question of decedent's contributory negligence, reasonable minds might differ as to the inferences to be drawn therefrom, in which case the authorities most favorable to appellee hold that such question was one for the jury.

We next inquire whether the undisputed evidence shows that the appellant's decedent assumed the risk. Appellant contends that the question of assumption of the risk is not in the case. This is true if this ques-

tion be determined from the complaint alone, because it avers facts showing that the decedent was without any knowledge or experience in the work required of him when he was killed, and that he knew nothing of its hazards and dangers; that the appellee was fully aware of the inexperience and lack of knowledge of decedent, and was fully cognizant of the character of the work required of him and the dangers incident thereto, and negligently failed to warn or instruct decedent with reference thereto. These averments were sufficient to show that decedent did not assume the risk of the dangers of the work at which he was engaged when killed. *American Strawboard Co.* v. *Foust* (1894), 12 Ind. App. 421, 431, 39 N. E. 891; *Consolidated Stone Co.* v. *Redmon* (1899), 23 Ind. App. 319, 323, 55 N. E. 454. It follows from these authorities that, if appellant made the necessary proof of the averments of her complaint indicated, the decedent could not be charged with the assumption of risk and that the question for our determination on this phase of the case is whether there is any evidence which might have justified the jury, had the court submitted the case to it, in inferring that such averments had been proven.

In considering this question, it should be stated that the mere fact that there was evidence showing that the decedent knew that there was some danger without showing further that he knew and appreciated its nature and character, would not be sufficient to justify a peremptory instruction in appellee's favor. *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583, 590, 591, 66 N. E. 454; *Indianapolis Traction, etc., Co.* v. *Holtsclaw* (1908), 41 Ind. App. 520, 532, 540, 82 N. E. 986; *Avery* v. *Nordyke & Marmon Co.* (1905), 34 Ind. App. 541, 552, 553, 70 N. E. 888; *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 302, 53 N. E. 235; *City of Fort Wayne* v. *Christie* (1901), 156 Ind. 172, 176, 177, 39 N. E. 385; *City of Columbus* v. *Allen* (1907), 40 Ind. App. 257, 260, 261, 81 N. E. 114.

Where the evidence as to whether the servant appreciated

the danger to which he was exposed is doubtful or admits of more than one inference, the question is for the jury.

9. For cases where the servant's appreciation of the danger, assumption of risk, whether the risk was visible, or discernible and similar questions are held to be questions of fact for the jury and not questions of law for the courts, see, *Chicago, etc., R. Co.* v. *Bryan* (1906), 37 Ind. App. 487, 490, 76 N. E. 678; *Avery* v. *Nordyke & Marmon Co., supra; Baltimore, etc., R. Co.* v. *Roberts* (1903), 161 Ind. 1, 13, 67 N. E. 530; *Wright* v. *Chicago, etc., R. Co., supra; Annadall* v. *Union Cement, etc., Co., supra*, 111; *Terre Haute Water Works Co.* v. *Highsmith* (1909), 44 Ind. App. 318, 89 N. E. 324, 325; *Pittsburgh, etc., R. Co.* v. *Parish* (1902), 28 Ind. App. 189, 202, 62 N. E. 514, 91 Am. St. 120; *Baltimore, etc., R. Co.* v. *Keiser* (1912), 51 Ind. App. 58, 94 N. E. 330, 333; *Baltimore, etc., R. Co.* v. *Leathers* (1895), 12 Ind. App. 544, 549, 40 N. E. 1094; *Ambre* v. *Postal Telegraph-Cable Co.* (1909), 43 Ind. App. 47, 53, 86 N. E. 871; *City of Columbus* v. *Allen, supra; Mahan* v. *Newton, etc., St. R. Co.* (1905), 189 Mass. 1, 4, 75 N. E. 59; *Snyder* v. *New York, etc., Tel. Co.* (1905), 73 N. J. L. 535, 538, 64 Atl. 122; *Rogers* v. *Leyden* (1890), 127 Ind. 50, 57, 26 N. E. 210.

"One of the duties which the law casts upon the master is not to expose an inexperienced servant, whom he requires to perform dangerous services, to such danger without giving him warning thereof. He is required to give such servant such instructions as will enable him to avoid the injury, unless while performing the required service both the peril and the means of avoiding it are apparent. Of course, the duty to warn and instruct in such cases naturally arises out of the ignorance or inexperience of the employe, and does not extend to employes who are of mature age, and familiar with the employment in which they engage and the risks incident thereto." *Republic Iron, etc., Co.* v. *Ohler* (1903), 161 Ind. 393, 402, 68 N. E. 901. See, also,

*Louisville, etc., R. Co.* v. *Frawley* (1886), 110 Ind. 18, 22, 9 N. E. 594; 6 Thompson, Negligence §§4695, 4696, 4091-4099; *Atlas Engine Works* v. *Randall.* (1884), 100 Ind. 293, 296, 297, 50 Am. Rep. 798; *Pittsburgh, etc., R. Co.* v. *Adams* (1885), 105 Ind. 151, 165, 5 N. E. 187; *Fletcher Bros. Co.* v. *Hyde* (1905), 36 Ind. App. 96, 102, 103, 75 N. E. 9; *Salem Stone, etc., Co.* v. *Griffin* (1894), 139 Ind. 141. 148, 38 N. E. 411.

Courts of all jurisdictions recognize the mysterious and subtle character and extreme dangers of the agency here involved, and the importance of and necessity for some knowledge of it on the part of those who are required to expose themselves to its dangers, and hence have held in effect that an inexperienced lineman whose lack of experience is known to his employer, does not assume the risks of dangers with which he is unacquainted, and the employer is bound to warn him against the dangers incident to high current wires. See, 2 Cooley, Torts (3d ed.) 1492; *Ambre* v. *Postal Telegraph-Cable Co., supra; Straubley* v. *Electric Power Co.* (1903), 21 App. Cas. (D. C.) 160; *Tedford* v. *Los Angeles Electric Co.* (1901), 134 Cal. 76, 80, 54 L. R. A. 85; *Jacksonville Electric Co.* v. *Sloan* (1906), 52 Fla. 257, 289, 290, 42 South. 516.

If the evidence of Mr. Featheringill, the chief of appellee's fire department should be accepted as true and the case determined upon it alone, there would probably be no doubt under these authorities, of the correctness of the court's action in giving the peremptory instruction. In addition to what we have heretofore indicated, the evidence of this witness showed, that decedent had abundant experience and that there was no reason or necessity for appellee giving him any warning or instructions in connection with the work which he was required to do, and was doing when killed. It may be said also that this evidence had considerable corroboration by other witnesses, but on the other hand, Mr. Featheringill was contradicted in many of

his statements, and, under the rules above announced, it is not Mr. Featheringill's evidence, or that of any other witness favorable to appellee, with which we are concerned, but on the contrary, in determining the question here involved, this evidence should all be excluded from our consideration except in so far as it, in connection with other evidence in the case, may furnish ground for inferences by a jury favorable to appellant.

We deem it unnecessary to set out in detail the evidence favorable to appellant but will set out the character and substance of enough of it to indicate our reasons for the conclusion reached in our determination of the question presented. Numerous witnesses testified to the incompetency of decedent and one or more testified that Mr. Featheringill, the chief, on numerous occasions had said that the decedent did not know anything about electricity. Several witnesses testified that decedent, on different occasions, had said he was afraid to climb up among the wires; that he had refused to climb the poles and got others to do this work for him when he was required to do it; that the chief of the fire department was cognizant of these facts and on one occasion at least paid the man who did the climbing of the poles. On another occasion when the chief had seen another go up the pole and do the work which he had ordered decedent to do, the chief and decedent had some words which resulted in his discharge. Numerous witnesses, including Featheringill, testified that decedent during a part of the time he was employed by appellee worked as fireman at the reel and on the truck, and one witness testified that decedent *"would only hold that job* (that of electrician) *when they could not get anybody else."* Another witness testified that he worked off and on for appellee in its fire·department for four years, during the time that decedent worked there; that part of the time the decedent worked on the reel and on the truck and part of the time "tried to do part of the work (of electrician) but failed * * * because he did not know nothing about the wires,

that * * * the chief told him (the witness) * * * several times that he had to go and have men to help Harry (decedent) out because he refused to go up the poles * * * on account of the electric light wires.'' Another witness, a practical lineman, testified in substance that a few months before decedent was killed, he went to Mr. Vest, the then mayor, of the city of New Albany and told him that the city ''with the high voltage lines they had around there ought to have a practical electrician''; that decedent knew nothing about those lines and they were liable to kill him; that the mayor agreed with him and said he was willing if the balance of them (the city council) would. Mr. Gross, who was mayor of the city of New Albany from September, 1904 to September, 1906, testified that while he was mayor, and a Mr. Craft was fire chief, decedent was employed as an ordinary fireman and that during this period the electrician quit on account of wages and the fire chief wanted the decedent to go and fix some lines and he refused because he said he was afraid of the wires. The chief told him if he did not go he would lose his job. Decedent agreed to go on that occasion, but then told the chief that he was going to call the mayor up and see if he had to go; ''and he did call me (the mayor) and he told me he wanted to see me on particular business. An appointment was made, and decedent then told me (the mayor) 'I have a big family to support.' * * * I will quit before I go out on them wires, *because I am no electrician* and I am afraid of them. * * * I says: You never worked with them much did you Harry? and he says no I am afraid of them * * * I will quit first and I says: You need not be afraid of losing your job on that account. * * * If the chief * * * undertakes to send you again on them wires * * * if you step right into a phone and call me up * * * you won't have to go. * * * After he (decedent) left I (the mayor) called the chief * * * up and told him not to send Harry Lyons out again.'' Another witness tes-

tified that he heard chief Featheringill say immediately after the death of decedent, while the crowd was gathered around him, that his death was the result of having an inexperienced man. Mr. Featheringill admitted that he gave decedent no warning or directions of any kind at the time of or before ordering him to do the work which he was attempting to do when killed and that he did not know of any such warning or instruction being given, by any other officer or employe of the city.

We have indicated evidence which we think sufficient to have justified a jury in drawing the necessary inferences in appellant's favor on the averments of the complaint which relieved decedent of the assumption of the risk, and also the inference that appellant was guilty of negligent failure of its duty in the matter of giving decedent proper warning and instructions. There was other evidence which, under the averments of negligence before indicated, was entitled to consideration, by the trial court before giving a peremptory instruction. Henry Siegel testified in substance that there was a plug at Vincennes and Market streets, which when pulled, would cut off the current; that if such plug had been pulled on the morning decedent was killed, there would have been no current in the high voltage wire near which he was working when killed; that such plug could have been easily removed in about two minutes; that the plug was in plain view and had been there about six years; that it was accessible to anybody, and any one of experience could take it out.

That the master, under the law, owes to the servant the duty of using reasonable and ordinary care to provide and maintain for him a safe place to work, and safe appliances with which to perform such work, is elementary. The Supreme Court and this court have interpreted reasonable or ordinary care to be of that degree which a person of ordinary prudence, under the particular circumstances, is presumed to exercise to avoid danger.

Such care, however, is required to be in proportion to the danger to be avoided, or prevented, and the consequences which may result from the neglect. *Republic Iron, etc., Co.* v. *Ohler, supra; Louisville, etc., R. Co.* v. *Schmidt* (1897), 147 Ind. 638, 46 N. E. 344, and cases cited. When we take into consideration the fact that there was evidence to the effect that the decedent was ordered by appellee to do the work he was doing when killed and when we consider the character of this work, the certainty and subtlety of the dangers therewith connected, and the evidence on the subject of the decedent's inexperience and lack of knowledge of such work and the nature of its dangers, together with appellee's knowledge of such facts, we are not prepared to say that a jury would not have been warranted in finding under the issues, and the evidence last indicated, that by failing to turn said switch and thereby render safe the decedent's place of work when it might have so easily done so, appellee neglected to exercise that degree of care and caution contemplated by the law as above indicated and hence that appellee should respond in damages for the natural consequences of its neglect. This conclusion is we think, supported by authority. *Felton* v. *Girardy* (1900), 104 Fed. 127, 130, 43 C. C. A. 439; *Reeve* v. *Coluso Gas, etc., Co.* (1907), 152 Cal. 99, 109, 110, 92 Pac. 89; *Jacksonville Electric Co.* v. *Sloan, supra.*

A careful examination and consideration of the issues tendered by the complaint and the evidence introduced thereunder, convince us that upon each essential averment of the first paragraph of complaint, at least, and upon the question of contributory negligence, there was some evidence from which a jury might have drawn an inference in appellant's favor, and under the authorities before cited herein, this was enough to require a submission of the case to the jury and to necessitate a new trial on account of the error of the court in giving the peremptory instruction. Judgment

reversed with instructions to the court below to grant a new trial and for any further proceedings not inconsistent with this opinion.

Lairy, C. J., Caldwell, Ibach and Felt, JJ., concur.

Shea, J., not participating.

NOTE.—Reported in 103 N. E. 20. See, also, under (1) 38 Cyc. 1567; (2) 38 Cyc. 1586; (3) 3 Cyc. 221; (4) 29 Cyc. 601; (5)) 29 Cyc. 631, 633; (6) 26 Cyc. 1482; (7) 26 Cyc. 1219; (9) 26 Cyc. 1478; (10) 26 Cyc. 1173; (11) 16 Cyc. 855; (13) 26 Cyc. 1097; (14) 26 Cyc. 1463, 1473. As to assumption of risk and contributory negligence in law of master and servant, see 97 Am. St. 884; 98 Am. St. 289. As to master's duty to warn or instruct servant, see 44 L. R. A. 33. As to the master's duty to instruct servant as to danger to which he is exposed, see 41 L. R. A. 143. As to duty to protect or warn against dangers not reasonably to be apprehended, see 21 L. R. A. (N. S.) 89; 39 L. Ed. U. S. 465. As to servant's assumption of risk of danger imperfectly appreciated, see 4 L. R. A. (N. S.) 990. For servant's assumption of risk from latent danger or defect, see 17 L. R. A. (N. S.) 76. As to attempting dangerous work in obedience to orders, without fully appreciating the danger, see 4 L. R. A. (N. S.) 838. As to applicability of the doctrine of assumption of risk to a lineman, see 15 Ann. Cas. 598; Ann. Cas. 1912 B 467.