## MATTHEWS v. MYERS.

[9,227.   Filed April 25, 1917.]

1. TRIAL.—*Directing Verdict.*—A peremptory instruction should be given by the trial court only when there is a total absence of evidence upon some essential issue, or where there is no conflict and the only inference which can possibly be drawn therefrom is favorable to the party asking the instruction. p. 374.

2. TRIAL.—*Directing Verdict.—Duty of Court.—Consideration of Evidence.*—In considering a motion for a peremptory instruction, the court must accept as true all facts which the evidence tends to prove, and draw against the party asking such instruction all inferences which the jury might reasonably draw, and, in case of conflict in the evidence, must consider only that which is favorable to the party against whom the instruction is requested.   p. 374.

3. PARTNERSHIP.—*Creation of Relation.—Evidence.—Unsigned Partnership Agreement.*—Articles of copartnership, drawn up after the negotiations concerning the formation of a new copartnership, which are not signed by all the parties, would not be legitimate evidence tending to prove a copartnership. p. 376.

4. PARTNERSHIP.—*Existence of Relation.—Conflicting Evidence.—Jury Question.*—It is the right and duty of the court to determine whether a partnership exists when the facts are undisputed and the inferences therefrom are clear, but where the evidence is conflicting or reasonable men may draw different inferences from undisputed evidence, the question is for the jury.   p. 377.

5. PARTNERSHIP. — *Existence of Relation. — Evidence. — Jury Question.*—In an action to recover wages alleged to be due from a partnership, it being claimed by defendant that the services were rendered by plaintiff as a member of the firm, evidence that plaintiff had been employed by defendant at an agreed price, part of which had been paid, and that articles of partnership, drawn up after certain negotiations between the parties, were never signed by plaintiff, who denied that he was a partner in defendant firm, was sufficient to require submission to the jury of the question whether plaintiff was a member of the firm.   p. 377.

6. CONTRACTS.—*Action for Breach.—Complaint.—Express Contract.—Variance.*—A complaint may declare upon an express contract and a recovery be had on an implied promise.   p. 377.

7.  PARTNERSHIP.—*Action for Money Loaned.*—*Jury Question.*—
   In an action to recover money loaned to a partnership, it being
   contended by defendants that the money sued for was paid into
   the partnership by plaintiff, as a member of the firm, evidence
   that plaintiff had loaned to defendant the amount in contro-
   versy, that he was not a member of the firm, and that he had
   been refused payment, together with corroborating testimony,
   was sufficient to require the submission of the case to the jury.
   p. 378.

From Elkhart Superior Court; *James L. Harman,*
Judge.

Action by Clarence B. Matthews against Reuben O.
Myers. From a judgment for defendant, the plaintiff
appeals. *Reversed.*

*Stuart MacKibbin* and *James S. Dodge,* for appel-
lant.

*George A. Kurtz* and *Perry L. Turner,* for appellee.

IBACH, P. J.—On October 21, 1913, appellant filed in
the St. Joseph Superior Court a complaint in two para-
graphs, naming as defendants therein, "Reuben O.
Myers, Arthur Walton, Partners doing business under
the name and style of Myers Bros." The material
averments of the first paragraph are as follows: The
defendants were on July 10, 1913, and for more than six
months prior thereto, engaged in business together as
copartners at South Bend, Indiana. Appellant was em-
ployed by them in their business, for which they agreed
to pay him $30 a week. Appellant worked for the de-
fendants from about March 1, 1913, for 18 2/3 weeks,
which at the agreed price amounted to $560. Defend-
ants paid appellant $240 of said wages and there is a
balance still due and unpaid of $320.

The second paragraph instead of seeking to recover
wages alleges that appellant "loaned the defendants as
such co-partners various sums of money, to wit:" On
February 17, 1913, $400; on March 3, 1913, $100; and

on March 17, 1913, $50, in all $550, "which defendants agreed to pay to this plaintiff." That the same is due and unpaid and defendants have refused payment.

The defendant Reuben O. Myers answered by general denial. The cause was submitted to a jury for trial and at the close of plaintiff's evidence appellee moved the court to instruct the jury to find for the defendant. The court so instructed the jury and it returned a verdict in favor of appellee (defendant below). A motion for a new trial was overruled and such ruling is assigned as error. While presented in different form by the several grounds of the motion for a new trial, the question which we have to determine is whether the court erred in giving the peremptory instruction to the jury.

That such an instruction should be given by the trial court only when there is a total absence of evidence upon some essential issue, or where there is no

1. conflict and the evidence is susceptible of but one inference and that inference is favorable to the party asking the instruction, is well settled.

2. And in considering such question the court must accept as true all facts which the evidence tends to prove and draw against the party requesting such instruction all inferences which the jury might reasonably draw, and, in case of conflict, consider that evidence only which is favorable to the party against whom the instruction is requested. *Lyons* v. *City of New Albany* (1913), 54 Ind. App. 416, 421, 103 N. E. 20, and cases cited.

Among other evidence given in the cause is the following: Clarence B. Matthews, appellant, testified that he was employed by Myers Brothers from March 3 to July 10, 1913, eighteen weeks and four days, at an agreed price of $30 a week, and that they had paid him $240, leaving the balance unpaid. Appellant further

testified that during the year 1913 he paid money to Myers Brothers, as follows: On February 17, $400; on March 3, $100, and on March 17, $50—a total of $550; that this money was paid to Arthur Walton for Myers Brothers; that the $550 was never repaid; that witness demanded it of Mr. Myers and Myers told the witness that, "We did not owe it. We have no record to show that you ever paid in any money"; that Myers refused to pay it. The witness was questioned as to what the books showed in reference to any entry that Myers Brothers owed him the money above referred to. The witness took the daybook and indicated and read certain items therein showing that Mr. Walton had paid in the amounts and at the times shown by appellant's testimony but made no mention of appellant. To explain these entries appellant further testified that some time after these different amounts had been paid he examined the books and, finding his name not mentioned, took up the matter with Mr. Walton. "I had Mr. Walton make off the list and put in here when I found that the $400 had not been credited in my name. The slip was made off telling the three different amounts that I had paid in and how it was paid in." Appellant further testified that there was a record that he loaned Myers Brothers the money.

Charles W. Cohen testified that he was the cashier of the Merchants National Bank of South Bend in 1913 and that "Myers Bros." had an account with the bank. When shown certain deposit slips (afterwards introduced in evidence) witness testified that on February 17, March 3, and March 17, respectively, Myers Brothers made certain deposits in the bank. The deposit slips show that $400 in currency was deposited on February 17, $100 on March 3, and $50 on March 17, 1913. R. O. Myers, appellee, testified that the copartnership of Myers Brothers was composed of him-

self and Arthur Walton; that it was formed October 30, 1911, and continued until July 10, 1913, when it was dissolved.

It is claimed by appellee that if the evidence shows anything, it shows conclusively that appellant during all of the time he claims to have worked for appellee was a partner of appellee, and if any money was paid by appellant to appellee it was paid for an interest in the partnership. Upon this phase of the question, in addition to the evidence heretofore set out, appellant testified in substance that certain negotiations were had between witness Walton and appellee relative to the formation of a new copartnership to be known as the Myers Brothers' Company, to be composed of appellant, Walton and appellee. This copartnership was never completed. An inventory was to be taken. Appellant was to pay in his part and articles of agreement were to be drawn up and signed by the members. The articles of copartnership were drawn up but were never signed by appellee. Appellant received no benefit from the contemplated copartnership, and testified positively that he was not a partner. A letter from appellee was introduced in evidence in which he expressly denied that any agreement had been entered into by him, except the original copartnership agreement with Walton. Other evidence favorable to appellant is shown by the record, but, without setting it out, we deem it sufficient to say that the evidence set out is corroborated in most of its essential features by the testimony of other witnesses.

The articles of copartnership drawn up after the negotiations concerning the formation of a new copartnership, not having been signed by all the parties, would not be legitimate evidence tending to prove a copartnership. *Beall* v. *Poole* (1867),

3.

27 Md. 645, 647; *DeTemple* v. *Mitchell* (1900), 15 Colo. App. 127, 61 Pac. 434; *Tweed* v. *Lowe* (1884), 1 Ariz. 488, 2 Pac. 757. The agreement, not having been executed by the parties, left the whole matter as if no writing had been drawn, and the case then depends upon whether the evidence shows an oral agreement of copartnership. The agreement introduced in evidence, unsigned, especially in connection with appellee's letter expressly denying any agreement other than the original agreement with Walton, was, in fact, evidence tending to show that there was no new copartnership.

To the court belongs the right and duty of determining whether a partnership exists when the facts are undisputed and the inferences therefrom are clear.

4. Questions of fact, where the evidence is conflicting or where reasonable men may draw different inferences from undisputed evidence, are to be determined by the jury. Elliott, Contracts §480; Rowley, Mod. Law of Partnership §214; 30 Cyc 476.

The evidence in this case is by no means conclusive upon the question of the existence of a copartnership between appellant, appellee, and Walton, and fair

5. and reasonable minds might very readily differ as to the effect of all the evidence on that subject. It should therefore have been left to the jury. In the absence of conclusive evidence that appellant was a member of a new copartnership and rendered services for a partnership of which he was a member, there is evidence above set out which should have gone to the jury in support of the first paragraph of the complaint.

The second paragraph, as hereinbefore indicated, proceeds on the theory of a loan. It has been held in this State that a complaint may declare upon an ex-

6. press contract and a recovery be had on an implied promise. *Indianapolis Coal Traction Co.*

v. *Dalton* (1908), 43 Ind. App. 330, 334, 87 N.
7. E. 552; *Scholz* v. *Schneck* (1909), 174 Ind. 186,
190, 91 N. E. 730. Under such holdings there
was evidence which should have gone to the jury in
support of the second paragraph of complaint.

The judgment is reversed, with instructions to sus-
tain appellant's motion for a new trial and for further
proceedings not in conflict with this opinion.

NOTE.—Reported in 115 N. E. 959. See under (1) 71 Am.
Dec. 229, 38 Cyc 1565; (4, 5) 30 Cyc 593.