HARRIS, ADMINISTRATRIX, *v.* CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY.

[No. 12,928.    Filed November 17, 1927.    Rehearing denied February 1, 1928.]

*Will R. Vosloh* and *Lindley & Bedwell,* for appellant.

*Will H. Hays, Hinkle C. Hays, Alonzo C. Owens, W. Paul Stratton, John S. Taylor, William H. Bridwell* and *George W. Buff*, for appellee.

NICHOLS, J.—Action by appellant, as administratrix of her deceased husband's estate, to recover damages from appellee because of negligence of appellee, which resulted in the death of the husband. The first and second paragraphs of complaint were based upon the Federal Employers' Liability Act; while the third paragraph was based upon common-law negligence of appellee.

After issues were formed, the cause was submitted to trial by jury, and when appellant closed the introduction of her evidence and announced that she rested, appellee filed its written motion requesting the court to direct the jury to return a verdict for appellee. Appellant objected to such motion, which objection was by the court overruled. Thereupon, the court sustained the motion and instructed the jury to return a verdict for appellee, and tendered to the jury a written verdict, for appellee. Appellant objected to the action of the court in so tendering and delivering such verdict and in so instructing the jury, which objection was overruled. Thereupon, the jury retired to its jury room and returned into open court the verdict so tendered by the court, by which it found for appellee. Proper objections were made and exceptions taken to the court's action.

Appellant filed her motion for a new trial which was by the court overruled, and judgment was rendered for appellee, and this appeal followed. The error assigned is the court's ruling on the motion for a new trial.

The sole question presented by this appeal is: "Did the trial court err in instructing the jury, at the close of appellant's evidence, to return a verdict for appellee?"

It is appellant's contention that at the trial of the cause she introduced evidence which was amply suffi-

cient to sustain each of the essential allegations of her complaint. It appears by the evidence that appellee operated a line of railroad and a switch yard at Seifert, in Vigo county, Indiana, on January 23, 1924, and for many years prior thereto; that on January 23, 1924, and for many months prior thereto, appellant's decedent had been and was employed by appellee at its switch yard at Seifert; that the decedent, at the time of his death on January 23, 1924, was employed as an oiler and brasser on the rip track; that as an oiler and brasser he worked under a foreman; that the track was locked and protected; that he had nothing to do with the making up of trains or the coupling of air hose; that about January 20, 1924, he was substituted for Charles Hayhurst, who was off duty, and who was employed to work with an inspector in inspecting and making up trains at another part of the yard; that decedent had had no experience in the coupling of air hose in the making up of trains prior to this time; that the work of making up trains and the coupling of air hose in yards was more dangerous than the work on the repair track which work decedent had previously done; that, in the making up of trains at the switch yard at Seifert, appellee had a switching crew in charge of a switch engine consisting of an engineer, fireman, conductor and two brakemen; that the conductor controlled the operations of the engine; that it was the duty of one of the brakemen to ride next to the engine when cars were being switched, and that it was the duty of the other brakeman to ride at the head of a cut of cars being switched so as to stop them or control them if they were cut loose from the engine; that, while trains were being made up, it was customary practice for the train inspector and his "oiler" to couple the air hose of such train while it was being made up, and the switching crew in charge of switching operations knew of this practice; that the

switching tracks in appellee's switch yard were in close proximity to one another; that the switch engine operated upon a lead track connected to each of the switch tracks by a switch; that, in the making up of trains, the switch engine always backed with cuts of cars; that sometimes it would throw a cut of cars into one track and sometimes into another; that the practice existed of coupling the air hose upon the cars and of inspecting and repairing these air hose while the trains were being made up; that no system of signals had been established by appellee to warn an employee in the act of repairing or coupling air hose of the approach of a switch engine upon the particular track where such employee was working; that when appellant's decedent was killed on the night of January 23, 1924, he was working as an "oiler" under Bert Jewell, a train inspector, and that he worked under the orders of Jewell, but at such time his regular employment was an oiler and brasser on the repair track, but he was doing substitute work for Charles Hayhurst, who was off duty because of illness of his wife; that when an oiler worked under a train inspector in the yards, he worked under the orders of such train inspector; that decedent was killed by a switch engine throwing a cut of cars into switch track No. 5 while decedent was between two cars there located, for the purpose of coupling the air; that, just prior to the death of plaintiff's decedent, he had been working with Jewell, and Jewell knew that he was going out in the yard to couple air where a train was being made up; that Jewell had been acquainted with the decedent for thirty years and had known the kind of work that he had previously performed at these switch yards; that when the decedent went to couple air where a train was being made up on track No. 5, Jewell had the opportunity to warn the train crew that the decedent was going to couple air where such train was being made up; that at this par-

ticular time, the inspector, Jewell, and decedent had but one blue light, which was located at the north end of track No. 1; that Jewell alone could have moved this light, and could have placed it at the switch where track No. 5 led off of the lead, and, if he had done so, no switch engine would have gone into that track while decedent was coupling and repairing the air hose; that Jewell could have stood at the switch where track No. 5 came from the lead and with his carbide light could have protected decedent by signals to the train crew; that, if he had done so, the train would not have moved any cars into track No. 5 while decedent was working there; that Jewell failed to take any of these steps for the protection of decedent, although he knew of his inexperience; that when decedent was killed, he was coupling air hose on certain cars that had been placed on track No. 5; that he was killed about 10:45 o'clock on the night of January 23, 1924; that while he was performing his work, he wore a carbide light upon his head; that about fifteen cars had been placed on track No. 5, and that he was working near the north end of this string of cars; that the switching crew moved a cut of cars into track No. 5 and threw them against the cars where decedent was working; that no field brakeman was riding this cut of cars for the purpose of stopping the same or giving signals; that when the cut of cars was first thrown against the cars between which decedent was working, the cars started to move slowly; that, because of the lack of a field brakeman to put brakes upon the same or to signal the engine, they gained in speed; that, at the first impact, decedent was probably not injured, but was caught between the cars, and, because of the movement of the cars, he was thrown down under the wheels and killed; that although the coupling of air hose, and the repair of the same, while a train was being made up, was extremely dangerous work, appellee permitted the work

to be carried on in this manner, and it never promulgated any rule or caused any system of signaling or warning to be given by the switching crew or otherwise to the men who necessarily must go between the cars in the performance of such work, and who, while performing their work, would be cut off from view of the switch engine; that when decedent left the north end of track No. 1 to go to couple air hose on track No. 5, he wore a carbide light upon his head and the location of the switch engine and switching crew and surrounding conditions were such that the switching crew knew, or might have known, of his movements until he reached the place where he was working at the time that he was killed; that, at the time decedent was killed, he was coupling air hose upon cars that were being made up into a train for interstate shipment; that while decedent was working between two cars and was coupling the air hose of the same, the switching crew moved other cars against the cars where he was working without giving any signal or warning that the same would be done; that, previous to the time appellant's decedent was killed, appellee had rejected the provisions of the Indiana Workmen's Compensation Law.

There was evidence of the wages of decedent, conditions of his health, that he left a widow and four infant children wholly dependent upon him for support, his age and expectancy in life.

With reference to giving a peremptory instruction, the court in *Matthews* v. *Myers* (1917), 64 Ind. App. 372, 115 N. E. 959, thus stated the rule: "That such an instruction should be given by the court only when there is a total absence of evidence upon some essential issue, or where there is no conflict and the evidence is susceptible of but one inference and that inference is favorable to the party asking the instruction,

is well settled. . And in considering such question the court must accept as true all facts which the evidence tends to prove and draw against the party requesting such instruction all inferences which the jury might reasonably draw."

As the evidence shows that appellant's decedent was, at the time of his injury, helping to make up a train of Chicago cars, he was engaged in interstate commerce. Under the provisions of the Federal Employers' Liability Act, he did not assume the risk of injuries resulting from the negligence of fellow servants. *Baltimore, etc., R. Co.* v. *Berdon, Admr.* (1924), 195 Ind. 265, 270, 145 N. E. 2, 150 N. E. 407. While the decedent had for many months been working for appellee under a foreman, working in repair work on a rip track that was locked and protected, and where he had nothing to do in making up trains, it also shows that, about three days before his injury and death, he was substituted for another workman, whose wife had died, in a service much more dangerous than his regular work. Under the circumstances of this case as revealed from the evidence, it was a question of fact for the jury to determine whether he assumed the risk of his employment. *Pennsylvania Co.* v. *Stocker, Admx.* (1918), 67 Ind. App. 329, 337, 119 N. E. 163. In *Louisville, etc., R. Co.* v. *Payne's Admr.* (1917), 177 Ky. 462, 197 S. W. 928, L. R. A. 1918C 376, 379, in a case similar to this, the Supreme Court of Kentucky thus stated the rule: "The railroad company is under the humane duty to anticipate the presence of such employees under or between the cars and to take such precaution for their safety as a proper lookout and timely warning of approaching cars will afford; and this duty is owing, whether the injured employee protects himself by means of a blue flag or not, and particularly so, where, . . . the rule requiring such action upon his part was habitu-

ally disregarded with the acquiescence of the employees of the company superior in authority to the injured employee."

We approve this statement of the rule that should prevail here. Under these authorities, and under the evidence, we hold that among the questions which should have been submitted to the jury, it should have been permitted to find as to whether appellee's employee Jewell was guilty of negligence in failing to take steps to protect the decedent; whether appellee's switching crew was negligent in suddenly creating a perilous situation by throwing cars against the cars that the decedent was coupling without any warning to him; whether appellee was negligent in failing to promulgate rules requiring signals or warnings for the protection of employees working as was the decedent in making up trains; and whether appellee was negligent in failing to have a rear brakeman at the end of the cut of cars that was kicked onto the track where the decedent was working, and ran against the cars between which he was working thereby injuring and killing him. We are clear that this case was for the jury without a peremptory instruction.

Reversed.