## PHELAN, ADMINISTRATRIX *v.* EDGELY.

[No. 14,768.   Filed April 7, 1934.]

*John B. Kennedy* and *Tinkham & Galvin,* for appellant.

*William J. McAleer, Francis J. Dorsey, James J. Clark,* and *William L. Travis,* for appellee.

SMITH, J.—Appellant brought this action against appellee for damages for the wrongful death of appellant's decedent, alleged to have been caused by appellee in the

negligent operation of appellee's automobile upon a public street in the city of East Chicago, Indiana.

The case was tried to the court and jury, and, at the close of appellant's evidence, the trial court gave a peremptory instruction, directing a verdict for the appellee.

Appellant seasonably filed her motion for a new trial which alleges as a ground therefor the giving of this instruction. The court overruled the motion for a new trial, which action is the only error assigned for reversal.

The complaint is in one paragraph, and alleges that the appellee, and his wife and son and daughter were riding in an automobile owned by appellee, and driven at the time of the injury complained of by appellee's son, under the direction and on behalf of appellee; that appellant's decedent was lawfully upon and proceeding to cross Forsythe Avenue in the city of East Chicago, Indiana, at or near the intersection of 141st Avenue, traveling from the east to the west in a careful manner; that appellee's son was driving the car in a residential district at a high, dangerous, and reckless rate of speed, of 45 miles per hour, which speed was greater than was reasonable and prudent in view of the attending circumstances, and failed to observe appellant's decedent, who was in plain view upon said street, and negligently and carelessly ran the automobile against appellant's decedent, and by reason thereof appellant's decedent was struck and injured, from which injuries he died soon thereafter; that appellant's decedent's death was caused solely and proximately by the negligence of appellee's servant and agent without any fault on the part of appellant's decedent. Then follow the allegations of the age and expectancy of life, and other elements of damage.

To this complaint, appellee filed an answer in general denial. In order to determine whether the trial court

erred in giving the peremptory instruction, which is the only question in the case, we shall set out the substance of the evidence in the case, as follows:

Forsythe Avenue at the place where the accident occurred was in a residential section, and runs north and south. The pavement, curb to curb, was 54 feet wide, with a single track for street cars near the center thereof. Appellee's automobile was traveling south thereon, upon the west side where the width of the pavement from the west rail of the railroad track was 29½ feet to the curb. On the east side, it was about 24½ feet from the east rail to the curb. At the intersection of 141st Avenue and Forsythe Avenue was a traffic light.

The driver for appellee testified on behalf of appellant that he was appellee's son, 19 years of age, unmarried, and lived at the home of his father, and was driving his father's automobile on the night of April 9, 1930, when it struck appellant's decedent; that his father, the appellee, and his mother were in the back seat of the car, and his sister, Ruby, was riding beside him in the front seat; that he was driving the family down Forsythe Avenue to a drug store, and came upon Forsythe Avenue about a mile and one-half north of the intersection of 141st Avenue and Forsythe Avenue; that it was on Saturday night, dark at the time, and the "weather was dry and the pavement was dry"; that he was driving a Ford sedan, 1929 model, owned by his father; that his father does not drive, and he does the driving for him, and was driving for appellee on that evening; that he had driven south on Forsythe Avenue to within one hundred feet of the stop light, then red, which changed to yellow and then to green; and he proceeded across 141st Avenue to a point, perhaps, 60 feet south of the intersection when he felt an impact and, at the same time, saw the body of a man in front of the

car on the left-hand side, which was thrown to the side; that he applied the brakes simultaneously with seeing the man, and stopped "within perhaps a car's length"; that he afterwards learned the body was James Phelan; that he drove the car to the curb, and immediately got out and helped to care for him, and took him to the police station; that he did not remember seeing any cars parked along Forsythe Avenue south of 141st Avenue; that there might have been some on the lower part of the block near 142d street; that he had no recollection of any being parked within 100 or 150 feet from 141st Avenue; that the automobile he was driving was equipped with lights which were burning at the time, a tail light and two headlights; that the headlights were dim, and showed approximately twenty feet ahead of the car; that he could see and distinguish objects in the roadway ahead of him for about twenty to twenty-five feet with the dimmers on, and could see farther than that with the bright lights; that he did not know how fast he was going at the time of the accident; that he had a speedometer on the car but had not looked at it; that he was driving on macadam when he struck appellant's decedent, and that the automobile was about three or four feet to the west of the west rail of the street car track; that there were no south-bound cars on the west side of the street car tracks, but there was north-bound traffic on the east of the street car tracks.

On cross-examination, he testified that the car he was driving had regular lights; that the dimmers were in good condition, as were the brakes, and the whole car was in good condition; that he saw the traffic light before he got to 141st Avenue at about 100 feet away, and, at that time, it was red; that he removed his foot from the accelerator, and slowed up; that the lights changed to green before he reached 141st Avenue; that he did not come to a stop at 141st Avenue because the

lights were green; that he was going about twenty-five miles per hour and was traveling at the same rate of speed after he crossed 141st Avenue; that he felt a thud at the front of the car and "saw the figure of a man at the front part of the car on the left side"; that he applied the brakes and stopped within the car's length; that he did not know where the man came from; that the man did not cross in front of the car's lights from the east; that he knew he did not come from the west, because he did not see him in the range of the lights although he was looking straight ahead; that the first time he saw him was when he hit him; that he could easily have seen him if he had come within the range of the lights; that he was driving from three to four feet from the west rail of the street car track when the man was hit; that the man was about fifteen feet back of the car when it stopped; that he did not see appellant's decedent jump out from between any cars, and that he did not cross at the corner where the lights were, and was crossing about 60 feet south of the corner; that he was familiar with this intersection, and had driven over the same street every day for about five weeks prior to the accident; that he had never had an accident of any kind before; that he did not see him because he did not come from the west, and he did not pass in front of him, and was not in front directly south of his car; that he could only have come from the east "from the traffic of the other cars across the track."

Upon re-direct examination, he said that the reason he said that the decedent did not come from the west and cross in front of the car was because he did not see him within the range of the lights, and that was the only reason he had for making that statement.

The appellant then read into the evidence the conditional examination of appellee in which he stated in

substance, that he was a millwright and lived in East Chicago, Indiana, and was the owner of the car involved in the accident; that he, his wife, son, and daughter were riding in the car at the time, and that his son was driving the car, with his permission and at his request; and that his son did all of the driving; that the car was traveling at the time of the accident about thirty miles an hour; that he saw the stop lights about a hundred yards away; and that the lights changed to green before they got to the intersection; that the driver slowed down; that he did not see the decedent before he was struck by the car; that there were no other cars on the west side, but that there were quite a few on the opposite side going north; that the left side of the car struck Mr. Phelan; that the car was brought to a stop about fifty or sixty feet south of the body; that the dim lights were burning on the automobile, and that the accident happened about 8:45 p. m., and that it was dark; that the first he knew there was an accident was when he felt a bump; that he did not hear any horn sounded, nor did he feel any sudden movement of the car either to the right or left before he felt the bump.

On cross-examination, he said there was nothing to obstruct the view after they passed the intersection of 141st Avenue until the time that the accident occurred, but that there was quite a stream of automobiles going north; that the decedent did not cross in front of the car; that he did not see him approaching the automobile before the accident took place; that they could see ahead about 80 feet, and the pavement was dark in color.

On re-direct examination, appellee testified that his son had been driving the car ever since they had it, and that the highway was badly lighted along that part where the accident occurred.

This was the substance of all the testimony in the case upon the subject of how the accident occurred, and it was upon this evidence that the lower court directed the jury to return a verdict for appellee.

The rule controlling the giving of a peremptory instruction is well settled in this state, and we quote from the case of *Gulbranson* v. *Hart et al.* (1929), 90 Ind. App. 171, 177, 168 N. E. 483, in which this court cited a number of cases, and said:

> "It is well established that a peremptory instruction should not be given unless there is a total lack of evidence upon some material issue, or where there is no conflict, and the evidence is susceptible of but one inference, and that inference is favorable to the party asking the instruction. *Engle, Admr.* v. *Director General Railroads* (1921), 78 Ind. App. 547, 133 N. E. 138; *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 87 N. E. 723.
>
> The trial court, before it gives a peremptory instruction, must accept as true all facts which the evidence tends to prove, and must draw against the party asking the instruction all inferences which the jury might reasonably have drawn, and if there are legitimate inferences tending to support the right of recovery in favor of one against whom the instruction is asked, the question should be left to the jury. *Mathews* v. *Myers* (1917), 64 Ind. App. 372, 115 N. E. 959; *Lyons, Admx.* v. *City of New Albany* (1913), 54 Ind. App. 416, 103 N. E. 20; *Roberts* v. *Terre Haute Elec. Co.* (1905), 37 Ind. App. 664,. 76 N. E. 325, 895; *Gasco* v. *Tracas* (1927), 85 Ind. App. 591, 155 N. E. 179; *Kearns* v. *Burling* (1896), 14 Ind. App. 143, 42 N. E. 646."

It is not necessary to discuss the law upon this question further, for the case resolves itself into the proposition as to whether there is any evidence in the record or facts from which any inference could be drawn favorable to the appellant, which requires the submission thereof to the jury.

We have carefully examined the record in this case, and read all the testimony offered herein, and have set out above the substance of all the testimony that ██ was offered upon the question of the negligence of the appellee, and have come to the conclusion that there is no evidence to establish the fact that there was any negligence on the part of the appellee as alleged in the complaint which was the proximate cause of the death of appellant's decedent. It has been said repeatedly that not only must the party seeking to recover on the grounds of negligence prove one or more of the acts of negligence alleged in the complaint, but must also show that such negligence was the proximate cause of the injury. This the appellant has failed to do.

The giving of the peremptory instruction was proper, and the court did not err in overruling appellant's motion for a new trial.

Judgment affirmed.