HOPPLE ET AL. *v.* THE STAR CITY ELEVATOR
COMPANY, INC.

[No. 19,191.  Filed March 22, 1961.]

586

*Louis E. Reidelbach,* of Winamac, *Charles D. Boomershine,* of Monticello, and *Kizer & Neu,* of Plymouth, for appellants.

*Albert B. Chipman,* of Plymouth, *Joseph A. Noel,* of Kokomo, and *Jump, Noel & Lacey, Robert J. Kinsey* and *Jerry L. Angel,* all of counsel, all of Kokomo, for appellee.

Gonas, J.—This was an action for damages by appellants for breach of a written hauling contract by appellee, between appellants and appellee. This cause was submitted to a jury, and at the close of all the evidence in the case, the trial court gave a peremptory instruction to the jury to return a verdict for appellee.

The parties have raised several interesting questions in their briefs in this court, but the propriety of the trial court's action in giving the peremptory instruction is the controlling question on this appeal.

In considering this question we are governed by the

rule that a peremptory instruction may be properly given if, and only if, there is a complete failure of evidence on an essential element of plaintiff's case, or where there is no conflict in the evidence, and it is susceptible to but one inference, and that inference is favorable to the party asking the instruction. *Baker* v. *Bundy* (1913), 55 Ind. App. 272, 103 N. E. 668; *Lyons* v. *City of New Albany* (1913), 54 Ind. App. 416, 103 N. E. 20.

The written contract, so much as is necessary for a complete determination of this case, reads as follows:

". . . It is therefore agreed as follows: That the said George Hopple and Max Wentz shall be given the first opportunity to do all of the shelling and the hauling to and from the Star City Elevator Company, Inc., and when said hauling and shelling is done for said Elevator Company, the said company agrees to pay the sum of four cents per bushel up to and including four miles. Any mileage over and above the four mile limits, the said George Hopple and Max Wentz shall be paid by the Elevator Company at the rate of one-half cent per bushel for each additional two miles, or fraction thereof.

"The said George Hopple and Max Wentz agree to transport all shipments of feed, grain and fertilizer beginning the 13th day of December, 1954; the said freight rates being set from each company depending on its location. Freight rates on feed shall be determined in the same manner with a minimum rate of $5.00 per ton on feed transported out of Chicago, Illinois. Hauling of grain will be spread in cents between track bid in car lots and truck bid to Chicago, Illinois or Louisville, Kentucky.

"The said George Hopple and Max Wentz agree that if the said contract be terminated by reason of their default, they will not haul or shell corn within a 25-mile rad*ious* of Star City, Indiana, excluding Culver, Indiana and a 15-mile rad*ious* thereof.

"The said George Hopple and Max Wentz shall have the option by giving a written notice to terminate this contract, by giving said notice 30 days before the expiration of one year from the date of this contract. If no such notice to terminate shall be given by the said Hopple and Wentz, then this contract shall be in force for a period of three years from date. At the end of said term said contract may be renewed upon the same terms by the parties hereto.

"The said George Hopple and Max Wentz shall not compete with the said Elevator Company within the 25-mile rad*ious* of Star City, Indiana, excluding Culver and a rad*ious* of 15 miles thereof, if the option to terminate this contract shall be excerized by them.

"The said George Hopple and Max Wentz shall furnish all license tags, drivers licenses, union fees, fees assessed by municipal corporations, or other fees of any kind or character other than as herein provided, and the said Elevator Company shall have no respons*a*bility whatever, to the said Hopple and Max Wentz, their drivers, helpers, employees for any fines or costs or expenses incurred by the said Hopple and Wentz or any of their employees by reason of their failure to have proper markings or equipment, or by reason of any violation of the said Hopple or Wentz, or their employees, of any rule or order of the Bureau of Motor carriers of the Interstate Commerce Commission, or any Public Utility Commission, or other authority of any state; and nothing in this contract shall be construed to make the said Hopple and Wentz agents of the Star City Elevator Company.

"The said George Hopple and Max Wentz agree that they will at all times comply with all laws, rules and or regulations of any governmental body through w*ith* they may be operating, and they agree to carry workmen's compensation and other insurance for the benefit of their employees, and that they will assume full respons*a*bility for the payment of all state and federal unemployment insurance, old age pensions, or other social security laws as to all persons engaged in the performance of this contract, and they further agree to meet all re-

quirements of regulation now or hereafter adopted or promulgated by legally constitued authority in respect thereto.

"In Witness whereof the parties have hereto set their hands and seals the year and the day above first herein written.

"George E. Hopple"<br>George Hopple

"STAR CITY ELEVATOR COMPANY, INC.
By Jesse Kail, Mgr. & Sec."

The evidence reveals that haulers (truckers) other than appellants did hauling for appellee during the contract period.

One truck owner testified that he was paid in the neighborhood of One Thousand ($1,000.00) Dollars. for the hauling he did for the Elevator Company during the contract period. A member of a trucking partnership testified that his company did hauling for the Elevator during the contract period, for an uncertain sum. One of appellants' drivers testified that he saw many truckers other than those of appellants, hauling for the Elevator Company. There was also testimony that a member of the company told one of the appellants that the contract was not worth the paper it was written on and he would operate the business as he saw fit.

Appellee argues in his brief that appellants failed to prove any damages with reasonable certainty.

> *Restatement of Contracts* §331 (1) Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty.

An estimation of damages is speculative where the evidence affords no basis for calculating or determin-

ing a party's damages with reasonable certainty. *Millikan* v. *Hunter* (1913), 180 Ind. 149, 100 N. E. 1041. Stated otherwise, profits which would have been realized, as shown by the evidence, but for defendant's default are recoverable. *Western Gravel Road Co.* v. *Cox* (1872), 39 Ind. 260.

The general rule is that where a peremptory instruction has been given the court will look only to the evidence favorable to the party against whom the verdict is directed to determine if there is any evidence to support each material allegation of such party's complaint, essential to recovery.

This rule being the guide, it is our judgment that appellants presented evidence on the issue of their damages, sufficient to have their case sent to the jury.

The testimony in the record reveals that appellants realized a net profit of Five thousand one hundred sixty-seven and 34/100 ($5,167.34) dollars from the Elevator Company during the contract period. Haulers other than appellants did Sixteen thousand ($16,000.00) dollars worth of hauling for appellee during the same period. It further appears that the percentage of the net profits to the gross receipts of the entire operation was 32.08%. The amount of hauling done each month of the contract period by appellants, and the amount of hauling done each month of the contract period by haulers other than appellants was determined as follows:

|  | *Appellants:* | *Other Haulers:* |
|---|---|---|
| Jan. 1955 | $ 1,930.89 | $ 19.77 |
| Feb. 1955 | 655.50 | 602.01 |
| Mar. 1955 | 1,185.14 | 420.89 |
| Apr. 1955 | 3,544.45 | 958.87 |
| May 1955 | 2,102.54 | 3,696.26 |
| June 1955 | 1,045.68 | 3,028.38 |

| | | |
|---|---|---|
| July 1955 | 1,387.12 | 3,150.25 |
| Aug. 1955 | 1,065.05 | 683.36 |
| Sept. 1955 | 299.17 | 14.00 |
| Oct. 1955 | 583.27 | 816.27 |
| Nov. 1955 | 207.96 | 384.07 |
| Dec. 1955 | 711.23 | 488.95 |
| Jan. 1956 | 1,607.12 | 786.05 |
| Feb. 1956 | 518.12 | 257.56 |
| Up to Mar. 11, 1956 | 000.00 | 915.18 |
| | $16,853.24 | $16,221.96 |

The record also discloses that the Elevator Company paid $2,507.29 for rail hauling during the contract period.

In view of such evidence we are not inclined to hold that there was a complete failure of evidence on the issue of appellants' damages and from which the jury could not have estimated appellants damages with reasonable certainty. The extent or measure of any damages that the evidence may establish is for the jury to decide under proper instructions from the trial court. A party does not lose his right to have his case go to the jury if there is any evidence affording a basis for estimation of the amount of damages to which he may be entitled.

By the long and uniform usage of many ages and before our state constitution arrived at its full perfection, the spirit of judicial philosophy in this country leaned toward the preservation of the individual liberty of trial by jury. This spirit is now implanted in our constitution (Ind. Const., Art. I §20, "In all civil cases the right of trial by jury shall remain inviolate") and rooted in our soil. While the directed verdict may be employed in certain cases, it should be used cautiously, sparingly, and jealously, in effort to preserve the individual liberty of trial by jury.

The directed verdict has never been an object of the court's bounty and we are not inclined to embrace it at this juncture.

It is our judgment that the court erred in giving the peremptory instruction to the jury to return a verdict for the Elevator Company.

Appellee attempts to support the action of the trial court by claiming that the contract was illegal, under Burns Ind. Stat. Anno. §47-1216 providing that certain common carriers obtain a certificate of public convenience, and necessity. We observe that Burns Ind. Stat. Anno. §47-1213 (f)-(g) (1960) Supp. provides:

(f) "Nowithstanding any other provisions of any other law this act [§§47-1211—47-1250] shall not apply to motor vehicles when transporting supplies when such supplies, fertilizer or fertilizing materials are in transit to or from farms."

(g) "To motor vehicles controlled and operated by any farmer whether used in the transportation of his agricultural commodities and products thereof, or in the transportation of supplies to his farm; or to motor vehicles controlled and operated by any non-profit cooperative association, or by a federation of such cooperative associations, if such federation possesses no greater powers or purposes than such cooperative associations; or to motor vehicles used in carrying property consisting of ordinary livestock or agricultural commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying other property, or passengers, for compensation. . . ."

Commercial fertilizer has been held a manufactured product and not covered by the exemption provisions of this act. *Stiver et al* v. *Holley* (1938), 215 Ind. 9, 17 N. E. 2d 831.

The parties do not contend that the contract in question is not legal and enforceable on its face. Such al-

leged illegality is a matter of defense upon which no evidence was adduced. Consequently, it cannot now be said that appellants were not covered by the exemption provision of §47-1213, *supra.*

Other errors suggested this appeal may not appear on the retrial of this cause. Concluding that the trial court erred in giving the peremptory instruction in appellee's behalf, the judgment is reversed with instructions to sustain appellants' motion for a new trial.

Gonas, J.

Pfaff, P. J. concurs.

Kelley and Bierly, JJ., concur in result.

Note.—Reported in 173 N. E. 2d 76.